UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL GRONDAL, a Washington resident; and THE MILL BAY MEMBERS ASSOCIATION, INC., a Washington Non-Profit Corporation,<br><br>  Plaintiffs,<br><br>  vs.<br><br>UNITED STATES OF AMERICA; US DEPARTMENT OF INTERIOR; BUREAU OF INDIAN AFFAIRS, et. al.,<br><br>  Defendants. | NO.  CV-09-0018-JLQ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CONFEDERATED TRIBES' MOTION TO DISMISS** |

**BEFORE THE COURT** is Defendant Confederated Tribes of the Colville Reservation's Motion to Dismiss for Lack of Jurisdiction (ECF No. 210). The Motion seeks the dismissal of the Colville Tribes as a Defendant from all claims and cross-claims arising in this case pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiffs and Cross-Claimant Wapato Heritage, LLC have opposed the Motion. The matter has been submitted for adjudication without oral argument.

ORDER - 1

# I. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on January 21, 2009. Plaintiffs have acquired memberships in and are tenants/occupants of the Mill Bay Resort, a campground located on Lake Chelan in Chelan County, Washington. The Mill Bay Resort exists on real property known as Moses Allotment No. 8, also known as Indian Allotment 151-MA-8 ("MA-8"), which consists of approximately 174.26 acres on the shores of Lake Chelan. MA-8 is part of an original allotment authorized under the Moses Agreement of July 7, 1883 as ratified by 23 Stat. 79-80, July 4, 1884 and conveyed to Wapato John through two trust patents. The history of the creation of MA-8 and other Moses Agreement allotments has been discussed elsewhere, including in this court's decision on summary judgment (ECF No. 144), in *Wapato Heritage, LLC v. U.S.*, 637 F.3d 1033 (9th Cir. 2011), and in *U.S. v. La Chappelle*, 81 F. 152 (C.C. Wash. 1897), *United States v. Moore*, 161 F. 513 (9th Cir. 1908), and *Starr v. Long Jim*, 227 U.S. 613 (1913).

Ownership of MA-8, like many allotted lands, has come to be shared by many fractional owners, who are named Defendants in this action. *See* W. Canby, American Indian Law in a Nutshell 429-434 (2010). The majority of Defendants are individual Indian landowners, whom the United States has refused to enter an appearance for.[1] *See* ECF No. 197 at 4; ECF No. 209 at ¶ 7. Defendants also include the Confederated Tribes of the Colville Reservation (for ease of reference herein referred to as "the Tribe"). It is a "federally recognized sovereign Indian tribe" (ECF No. 41 at 1), that has acquired an approximate 18% ownership interest in MA-8. See ECF No. 187. Defendant Wapato Heritage, LLC has acquired an ownership interest in MA-8. ECF No. 170 at ¶ 265(an approximate 24 % life estate interest). Wapato Heritage also owns the leasehold interests from contracts entered into with Plaintiffs for memberships in the Mill Bay Resort. Wapato Heritage, LLC, is the successor in interest

---

[1] The United States apparently takes the position the landowners are unnecessary parties. ECF No. 209 at ¶ 3(c)(ii).

to the Lessee's rights to MA-8 pursuant to a 1984 25-year lease with an option to renew for an additional 25 years. It has been established in other litigation in this court, CV-08-177, and affirmed by the Ninth Circuit Court of Appeals, that the option to renew was not exercised by reason of the failure of the Lessee to give proper notice to the landowners.

The claims asserted in this case are as follows.

**1. Plaintiffs' Claims**

Plaintiffs' claims in the Complaint against the Federal Government Defendants were dismissed by this court on January 12, 2010 for lack of subject matter jurisdiction. ECF No. 144. Therefore, the only remaining claim in the Complaint seeks declaratory judgment against the MA-8 landowners asserting that they are "equitably, collaterally, or otherwise estopped from denying the Plaintiffs their right to use the Mill Bay Resort until February 2, 2034." ECF No. 1 at 43, Prayer for Relief, ¶ 2; ECF No. 197 at 2.

**2. The Federal Defendants' Counterclaims and Crossclaims**

The Federal Defendants have counterclaimed against Plaintiffs for trespass and for ejectment from the Mill Bay Resort property. The Federal Defendants take the position that Plaintiffs' right to occupy the Mill Bay Resort expired on February 2, 2009. ECF No. 42. In defense of that claim, Plaintiffs assert the affirmative defense that the BIA should be estopped from evicting Plaintiffs based upon past acts by the BIA. *See discussion* at ECF No. 144 at 36-38. Plaintiffs allege that in pursuing eviction, the Federal Defendants are catering to the interests of the Tribe, which owns a casino on MA-8. Plaintiffs allege the Tribe is attempting to become the tenant with control over the entire Mill Bay Resort property. ECF No. 1 at ¶ 190.

The Federal Defendants' also assert a Crossclaim against Wapato Heritage, LLC on behalf of the Indian beneficial owners of MA-8 seeking a money judgment for rent allegedly due.

**3. Wapato Heritage, LLC's Crossclaims**

ORDER - 3

1    MA-8 is a parcel of land which has been characterized as land presently held by the
United States in trust for its beneficial owners.[2]  It has been so characterized by Plaintiffs
(ECF No. 1 at ¶ 18), by the Tribe (ECF No. 187 at 1), by the United States (ECF No. 42 at ¶
18; ECF No. 187 at 2), by this court where the fact was undisputed (ECF No. 144 at 4), by
Judge Robert Whaley of this court (Cause No. 08-CV-177-RHW, ECF No. 30 at 2), and the
Ninth Circuit Court of Appeals  (*Wapato Heritage, L.L.C. v. U.S.,* 637 F.3d 1033, 1035 (9th
Cir. 2011)).

On March 26, 2010, Co-Defendant Wapato Heritage filed separate crossclaims (ECF No.
170) regarding MA-8 expanding the scope of the litigation to issues beyond the use of the
Mill Bay Resort site.  Wapato Heritage contends that MA-8 and the Moses Allotments
proceeded on a path "fully independent of any other allotments" in history, and that the trust
period over MA-8 ended as of May 20, 1924 with the passage of 43 Stat. 133 (¶ 235), which
provided:

> Chapter 160...An Act to authorize the sale of lands allotted to Indians under the Moses agreement of July 7, 1883.
>
> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That any allottee to whom a trust patent has heretofore been or shall hereafter be issued by virtue of the agreement concluded on July 7, 1883, with Chief Moses and other Indians of the Columbia and Colville Reservations, ratified by Congress in the Act of July 4, 1884 (Twenty-third Statutes at Large, pages 79 and 80), may sell and convey any or all the land covered by such patents, or if the allottee is deceased the heirs may sell or convey the land, in accordance with the provisions of the Act of Congress of June 25, 1910.

Wapato Heritage clarifies in its Response to the Motion that it contends this Act was a
legislative grant of the land - **a direct grant of the fee, whereby title was passed from the
United States**.  *See* ECF No. 225 at 3 (stating that Wapato Heritage seeks declaration that
"titles" of all owners, including Wapato Heritage, have been, at all times from May 20, 1924,
in fee...").  Wapato Heritage contends the 1924 Act terminated the trust, passed MA-8 out of

---

[2] It is undisputed in this litigation that some beneficial owners of MA-8 have been accorded patents in fee.  *See* ECF No. 42 at ¶ 18; ECF No. 224, Ex. B.

ORDER - 4

trust status, and terminated all prior restrictions against alienation. Based on this position the Crossclaims assert: that the BIA has since 1924 "improperly asserted that MA-8 is subject to trust status," thereby confusing the rights of the landowners and parties (¶ 236); that since 1924 all owners have had the "immediate right to have a patent issued for their interest in land" in unrestricted fee (¶235); and that this court should compel the United States to issue fee patents to *all owners* (¶ 258), in essence to furnish to the owners evidence of the fee simple grant of the land made in 43 Stat. 133.

Specifically, Wapato Heritage seeks the following relief in its Crossclaims asserted against the Department of Interior and Bureau of Indian Affairs, the Tribe, and the individual Indian owners of MA-8:

1. Crossclaim One: Declaratory judgment that:

    a. "Any and all trust period and lawful encumbrances upon MA-8, in the hands of any person or entity, expired long ago"; and

    b. MA-8 is held in "absolute fee"; and

    c. MA-8 is not "Indian Country"; and

    d. MA-8 owners are tenants in common; and

    e. Absent fair payment of rent by any tenant of MA-8, the tenant is subject to immediate ejectment;

    f. The five-year casino replacement lease dated on or about March 27, 2009 is void ab initio; and

    g. Wapato Heritage is entitled to vote on any material action regarding MA-8;

    h. Wapato Heritage is entitled to receive distributions for revenue from MA-8.

2. Cross-claim Two: Claim to quiet title to MA-8 by declaration and patent in fee;

3. Cross-claim Three: Declaration that Defendants are estopped from denying existence of and 2034 termination date of the "Master Lease," the "Sublease", and "the 2004 Settlement";

ORDER - 5

    4. Crossclaim Four: Ejectment of the Tribe (and its affiliate, CTEC) from the casino site on MA-8, unless adequate rent from February 1, 2009 is paid to all MA-8 owners;

    5. Crossclaim Five: Money damages against the individual allottees in the amount of $751,285.

    6. Crossclaim Six: Order compelling the BIA to collect $751,285 owed by the Tribe for dispersal to the MA-8 owners;

    7. Crossclaim Seven: Partition of MA-8 pursuant to RCW 7.52; and

    8. Crossclaim Eight: Attorneys Fees and Costs.

ECF No. 170.

    Though questions of jurisdiction were apparent from the pleadings, upon request of the parties, on May 24, 2010, this court suspended discovery and stayed further motion practice in this case to permit the parties the opportunity to globally resolves the case in mediation. ECF No. 197. On April 19, 2011, the court continued the stay in order for the parties to have the benefit of the outcomes of another mediation between Wapato Heritage and the Tribe, and a ruling from the 9th Circuit in *Wapato Heritage, LLC v. United States*. ECF No. 207. On July 29, 2011, the represented parties submitted a joint status certificate indicating that in the 14-month stay, there had been no resolution of this case. The status report also listed twelve different issues the parties anticipated filing motions on and stated that the Tribe was "considering filing a motion to dismiss for lack of subject matter jurisdiction as to the Colville Tribes." ECF No. 209.

**II.    DISCUSSION**

    **A.    Legal Standards**

    **1.    Fed.R.Civ.P 12(b)(1)**

    The Tribe has maintained in this action and in the current Motion, that Plaintiffs and Cross-Claimant Wapato Heritage have not sufficiently plead a basis for jurisdiction to include the Tribe in this action. Specifically, it argues there are no allegations of a clear and unequivocal tribal waiver of Congressional abrogation of sovereign immunity. The Tribe

ORDER - 6

claims it has been "roped into" a dispute ultimately about "an alleged breach of contract by the Plaintiffs against Cross-claimant Wapato Heritage, LLC for damages." The Tribe requests dismissal of the claims against it pursuant to Fed.R.Civ.P. 12(b)(1).

Rule 12(b)(1) provides the procedural vehicle to raise a challenge to the court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A sovereign immunity challenge is a defense properly raised under Fed.R.Civ.P. 12(b)(1), *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011), although the concepts of sovereign immunity and subject matter jurisdiction present distinct issues. *U.S. v. Park Place Associates, Ltd*, 563 F.3d 907, 924 (9th Cir. 2009).

The plaintiff bears the burden of establishing the propriety of the court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.... It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction (facial attack), or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint (factual attack). The Tribe's Motion is primarily a facial attack on the sufficiency of the pleadings (citing a claimed violation of Fed.R.Civ.P 8(a)), but it is also a factual attack alleging there exists no basis to invoke jurisdiction over the Tribe.

When considering the motion the court is not restricted to the face of the pleadings, and may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (collecting cases). Where jurisdiction is intertwined with the merits, the court must "assume [ ] the truth of the allegations in a complaint ... unless controverted by undisputed facts in the record." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

**2.     Sovereign Immunity**

Where principles of sovereign immunity are at play, the plaintiff "bears the burden of pointing to such an unequivocal waiver of immunity." *Levin v. United States*, 663 F.3d 1059,

ORDER - 7

1063 (9th Cir. 2011) *(quoting Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983))

It is well settled that Indian tribes, as sovereign entities are generally immune from suit. *Santa Clara Pueblo v. Martinez*, 436 U.S. 165, 173 (1977). "The immunity extends to suits for declaratory and injunctive relief." *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991). "Indian tribes enjoy immunity because they are sovereigns pre-dating the constitution, and immunity is thought necessary to preserve autonomous tribal existence." *U.S. v. State of Or.*, 657 F.2d 1009, 1013 (9th Cir. 1981) (*citing U.S. v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506, 512-13 (1940)).

A tribe's waiver of immunity must be "'clear.'" *C & L Enter., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411(2001) (*quoting Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)). A waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58-59; *see also, Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (suggesting that a tribe's implied willingness to submit to federal lawsuits does not waive tribal sovereign immunity).

### 3.  Fed.R.Civ.P. 8(a)

The minimum requirements for a civil complaint in federal court are as follows:

> A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 8(a).

## B. Adequacy of the Pleadings

*1. Plaintiffs' Complaint*

Plaintiffs assert a claim against the Tribe for prospective equitable relief in the form of a declaratory judgment to prevent it from ejecting Plaintiffs from the Mill Bay Resort before 2034. Plaintiffs respond to the Tribe's attack on the sufficiency of the Complaint by pointing to ¶¶16-24 of the Complaint. ECF No. 1 at 8-9. However, these sections fail to state or allege

ORDER - 8

any basis for declaratory relief against the Tribe. Plaintiffs list the federal question and supplemental jurisdiction statutes, 28 U.S.C. §§ 1331, 1367; the federal law protecting civil rights 28 U.S.C. § 1343(a); the mandamus statute, 28 U.S.C. § 1367; the Administrative Procedures Act, 5 U.S.C. § 701 et seq.; and the Declaratory Judgment Act, 28 U.S.C. § 2201. None of these statutes contain an abrogation of tribal sovereign immunity or state any statutory basis for jurisdiction over a non-consenting tribe. Plaintiffs seek declaratory relief against the Tribe, yet the Declaratory Judgment Act does not confer jurisdiction on a federal court where none otherwise exists, nor is there any way to construe the Act as a waiver of sovereign immunity. *See e,g., United Tribe of Shawnee Indians v. United States*, 55 F.Supp.2d 1238, 1243 (D.Kan. 1999)(noting that neither 28 U.S.C. §§ 1331 nor 2201 constitute waiver of sovereign immunity), aff'd, 253 F.3d 543 (10th Cir. 2001). Plaintiffs' Complaint is silent as to a jurisdictional basis for its claim for against the Tribe.

### *2. Wapato Heritage's Crossclaim*

A cross-claim under the federal rules is considered a separate pleading which can be made outside the context of a responsive pleading, although in this instance, Wapato Heritage combined its Cross-claims with its Answer and defenses. Wapato Heritage did not respond to the Tribe's contention in its Motion to Dismiss that the Cross-claim violates Fed.R.Civ.P. 8(a). Wapato Heritage's Cross-claim has four sections: "Parties", "Facts", "Cause of Action[s]" and the prayer for relief. The "Jurisdiction" section is missing. That pleading contains no jurisdictional statement in violation of Fed.R.Civ.P. 8(a).

## C. Waiver of Immunity

### *1. Need for Discovery*

Plaintiffs assert the issue of sovereign immunity is not "ripe for determination." ECF No. 223 at 3. Plaintiffs claim they need the opportunity to conduct discovery to determine the terms and conditions of the Tribe's purchase of its interest in MA-8, and to determine whether any such purchase contained a waiver of sovereign immunity that would be applicable to the claims herein. *Id*. The Tribe states in its Reply that no such waiver exists, and that the

ORDER - 9

surmise that such a waiver could exist in its purchase agreements is an "absurd distraction." Plaintiffs have not offered any statement that it has a good faith basis to believe that further discovery would reasonably be likely to yield evidence in property conveyance documents of a waiver of sovereign immunity waiver against their claims. As there is no rational basis to believe such evidence exists, the court rejects the Plaintiffs' assertion they need additional time to conduct discovery on the issue of waiver.

### *2. Tribe's Conduct in Litigation*

Wapato Heritage contends that the Tribe's actions amount to a waiver of sovereign immunity to the claims asserted by Wapato Heritage in this case. First, it notes that the Tribe's corporation (the Colville Tribal Federal Corporation) has agreed in a sublease to waive its immunity to suit in the Colville Tribal Court. "Because a waiver of immunity 'is altogether voluntary on the part of a tribe, it follows that a tribe may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted.'" *Missouri River Services, Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848 (8th Cir. 2001)(*quoting Beers v. Arkansas*, 61 U.S. 527, 529 (1857)). The Tribe's consent to the jurisdiction of the Tribal Court in one instance is a term which must be "strictly construed and applied," *id*, and does not provide evidence that Tribe has given its permission to suit in this court. *See also, McClendon v. U.S.*, 885 F.2d 627, 630 (9th Cir. 1989)(the terms of a tribe's waiver may be limited and a sovereign's consent to be sued define that court's jurisdiction)

Wapato Heritage also suggests the Tribe has waived its sovereign immunity by having participated in this litigation since 2009. Wapato Heritage argues the Tribe's positions in its Answer to the Cross-claims and at ECF No. 187 could be construed as a request for this court to affirmatively declare in its favor that MA-8 is in trust status. The court notes that the Tribe also takes a position in its Reply brief that Plaintiffs' presence on MA-8 is illegal and the Tribe has been denied its property right to "use and occup[y]...their land." ECF No. 226 at 4.

ORDER - 10

Wapato Heritage admits this argument is "perhaps debatable." ECF No. 225. The Ninth Circuit has consistently stated that a tribe's participation in litigation does not constitute consent to suit. *See McClendon*, 885 F.2d at 630 (citing cases). In its responsive pleadings, the Tribe has objected to jurisdiction on sovereign immunity grounds. The conduct of the Tribe in this litigation thus far does not constitute an "explicit" waiver of sovereign immunity or consent to this court's jurisdiction.

Wapato Heritage also makes the contention that if the Tribe "elects to remain in the action to defend against the contentions of Wapato Heritage that MA-8 is not allotment property, and is not Indian Country, its election to do so would constitute an unequivocal waiver of its sovereign immunity." ECF No. 225 at 4. This election issue is not before the court, as the Tribe seeks dismissal from this action.

**D.  Nature of the Proceedings**

*1. Plaintiffs' Claim for Prospective Equitable Relief*

Plaintiffs argue that sovereign immunity does not extend to actions seeking prospective equitable relief in regards to off-reservation land. This is an argument rooted in the following comment in Justice Stevens' concurring opinion in *Oklahoma Tax Commission*: "the Court today recognizes that a tribe's sovereign immunity from actions seeking money damages does not necessarily extend to actions seeking [prospective] equitable relief." 498 U.S. 505, 516 (1991)(Stevens, J., concurring). The Tribe did not Reply to this argument.

However, Justice Stevens' concurring comment is not the law of that or other cases. In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59 (1978), decided well before *Oklahoma Tax Commission*, the Court unequivocally upheld a tribe's immunity from a suit that sought only declaratory and prospective injunctive relief. That aspect of *Santa Clara Pueblo* remains the law today. The *Oklahoma Tax Commission* majority announced that it was "not disposed to modify the long-established principle of tribal sovereign immunity." 498 U.S. at 510. Moreover, the Court has since reaffirmed the doctrine of tribal sovereign immunity in the strongest of terms. *See Kiowa Tribe v. Mfg. Techs, Inc.*, 523 U.S. 751, 754 (1998)("As a

ORDER - 11

matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." (emphasis added)).

### 2. *"In rem" Jurisdiction*

The primary argument both Plaintiffs and Wapato Heritage make is that the Tribe's sovereign immunity is not implicated here because the case involves property outside the boundaries of the Colville Reservation and because they "ask this Court to exercise *in rem* jurisdiction over these proceedings." ECF No. 223 at 2.

Instead of discussing sovereign immunity, Wapato Heritage's Response is devoted to what it contends is "the real issue in this case," "whether or not the court may proceed *in rem*, to decide the issues requested by Wapato Heritage..."  In its Response, Wapato Heritage asks the court to determine its Crossclaim seeking to "confirm that the land is in fee rather than in trust..." (ECF No. 225 at 10).  Plaintiffs' assert that MA-8 "may have been improperly characterized as restricted property held in trust," and argue that the status of the land "may significantly impact issues of jurisdiction..." ECF No. 223 at 4.  Wapato Heritage asks the court to decide the ownership interests in MA-8 in the context of this Motion, or in the alternative, provide a briefing schedule.  It also states if the court determines MA-8 is owned in fee by the landowners, the court should  "proceed *in rem*."

*In rem* is "[a] technical term used to designate proceedings or actions instituted *against the thing*, in contradistinction to personal actions, which are said to be *in personam*." Black's Law Dictionary 792 (6th ed. 1990) (emphasis in original)." *In rem jurisdiction* is "[a] court's power to adjudicate the rights to a given piece of property, including the power to seize and hold it." Black's Law Dictionary 856 (7th ed. 1999). An *in rem action* refers to a proceeding or action instituted directly against a thing, an action directly taken against property, or an action that is brought to enforce a right in the property itself. Actions *in personam* and actions *in rem* differ in that the former are directed against specific persons and seek personal judgments, while the latter are directed against the thing or property or status of a person and seek judgments which bind categories of persons to whom adequate notice was addressed.

ORDER - 12

Restatement (Second) of Judgments, § 6, comment a. (1982). For example, a condemnation action or federal civil forfeiture actions are actions *in rem*. *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142 (9th Cir. 1989). Federal quiet title actions, which do not "determine interests in specific property as against the whole world," but are brought against a defendant personally, are quasi *in rem* actions; "the [parties'] interest[s] in the property ... serve[ ] as the basis of the jurisdiction." *See State Engineer v. South Fork Bank of the Te-Moak Tribe of Western Shoshone Indians*, 339 F.3d 804, 811 (9th Cir. 2003). The traditional distinction between *in rem* and quasi *in rem* jurisdiction has largely disappeared. *Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039 (9th Cir. 2011)(citing Restatement (Second) of Judgments, § 6, comment a. (1982)).

Courts, including the Supreme Court, have recognized distinctions in the application of the doctrine of tribal sovereign immunity based upon the *in rem* or *in personam* nature of the proceedings. *See County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 268 (1992)(contrasting *in rem* jurisdiction over fee-patented land within reservation boundaries with *in personam* jurisdiction over nonmembers on the reservation); *Cass County Joint Water Resource District v. 1.43 Acres of Land in Highland Township*, 643 N.W.2d 685 (N.D. 2002)(tribal sovereign immunity did not apply to state's *in rem* condemnation action against non-reservation fee land held by the Tribe); *Lyon v. State*, 76 Idaho 374, 376 (1955) (a suit to quiet title is not a claim against sovereignty, but an attempt to retain what they allegedly own). Plaintiffs and Wapato Heritage cite to two Washington state court cases, both involving *in rem* property disputes (quiet title and adverse possession) lodged against tribal ownership interests in *fee land*. *Anderson & Middleton Lumber Co v. Quinault Indian Nation*, 130 Wn. 2d 862, 873 (1996)(sovereign immunity did not bar the *in rem* action for partition and quiet title of fee patented land subsequently acquired by the Nation); *Smale v. Noretep*, 150 Wn.App. 476, 480 (2009)(sovereign immunity did not apply to adverse possession claim against property subsequently deeded to a tribe). Neither case involved trust property or the United States as a party.

ORDER - 13

*a. Status of and Title in MA-8*

Though it was previously undisputed, whether MA-8 is fee land or held in trust by the United States is now in dispute in this case. The Tribe refers to this challenge to the trust status of MA-8 as "whimsical," "preposterous," "frivolous," not up for "legitimate debate," "superfluous," "a red herring," and a "misrepresentative distraction." These contentions suggest that the court should review the merits issue of the trust status and ownership of MA-8. However, the court has an obligation to address jurisdiction before turning to the merits of the case. The trust status and ownership of MA-8 will not be decided in the context of the Tribe's sovereign immunity Motion to Dismiss. Moreover, Wapato Heritage's Crossclaim regarding its interest in MA-8 presents a direct challenge to the interests of the United States who has not involved itself in the Motion at hand or yet filed its own motion. Though the Tribe mentions the Quiet Title Act (28 U.S.C. § 2409a) limitation on actions challenging the Government's interest in trust lands, this is a defense belonging to the Federal Defendants, not the Tribe.

Notably, the Federal Defendants have voluntarily placed the United States' ownership interest in MA-8 directly in issue by pursuing its claims for trespass and ejectment and its Crossclaim against Wapato Heritage for rent. In an action for trespass and in ejectment, a plaintiff is required to prove ownership and right to possession. The Federal Defendants' action against Plaintiffs is based upon the alleged existing trust responsibilities and ability to control occupancy on MA-8. Accordingly, the United States' interest in MA-8 must be determined in the context of the Government's trespass and ejectment claims against Plaintiffs. *See e.g., U.S. v. Phillips*, 362 F.Supp. 462 (D.C.Neb. 1973)(denying motion to dismiss counterclaim against the United States seeking to quiet title, where the United States had instituted quiet title and ejectment action). Furthermore, the Federal Defendants' Crossclaim against Wapato Heritage also is based upon the alleged trust status of MA-8. ECF No. 198 at 11, ¶ 1.

*b. In personam Claims*

ORDER - 14

Plaintiffs' and Wapato Heritage's contention that this is an *in rem* action is not an argument against dismissal of the Tribe or against the Tribe's sovereign immunity. If this were an action *in rem*, Wapato Heritage and Plaintiffs concede the Tribe would not have to participate in the case. *See* ECF No. 225 [Wapato Heritage Response] at 2-3 ("But the far more important question...is whether this Court can determine the rights of all MA-Owners...in [the Tribe's] absence."); ECF No. 225 at 11 ("Like any other landowner, [the Tribe] can refuse to participate...").

This action, however, is not purely *in rem*, and therefore the Tribe's sovereign immunity *is* implicated here. In order to characterize the actions as *in rem* or *in personam*, the court must "look behind the form of the action[s] to the gravamen of [the] complaint[s] and the nature of the right[s] sued on." *State Eng'r v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 810 (9th Cir. 2003). The Tribe claims Plaintiffs' and Wapato Heritage's *in rem* arguments in response to the Tribe's Motion were clearly an afterthought assertion, as neither party has specifically pleaded their claims as *in rem* claims or asserted *in rem* jurisdiction in their pleadings. The Tribe argues this failure should "bar[] [them] from now claiming that this is an *in rem* action." However whether a proceeding is *in rem* or *in personam* is determined not by the party's characterization, but by the nature and purpose of the action.

Plaintiffs' remaining claim in the Complaint asserts a single cause of action and requests a single form of relief: a declaratory judgment that the MA-8 landowners are "equitably, collaterally, or otherwise estopped from denying the Plaintiffs their right to use the Mill Bay Resort until February 2, 2034." ECF No. 1 at 43, Prayer for Relief, ¶ 2; ECF No. 197 at 2. Plaintiffs improperly characterize this estoppel cause of action when they claim in their Response that the remedy they seek in this case is "a judicial determination of the...relative interests in real property and a division of that property according to those interests." Plaintiffs also suggest in their brief that they seek a determination regarding "all parties respective rights to the possession and use of MA-8..." In fact, no such relief is sought either in its Complaint

ORDER - 15

or in defense of the United States' ejectment action. Plaintiffs do not seek a disposition of the property or allocation of title. Plaintiffs only remaining claim seeks an estoppel finding, directed at specific persons/entities. Such a claim is an action to enforce rights in equity. The claim does not operate upon the land itself. Estoppels are only binding on parties and their privies, and does not bind judgment *in rem*, where the law acts upon the property itself. Plaintiffs' action against the Tribe is not a proceeding *in rem*.

Wapato Heritage's third Crossclaim seeks estoppel and its fifth Crossclaim seeks recovery for overpayment in the form of damages. These claims are *in personam* claims against the Tribe, not claims against the land.

Neither Plaintiffs nor Wapato Heritage have cited any authority providing that these *in personam* claims may be brought against the Tribe under any circumstances. Their failure to address the *in personam* claims suggests to the court that they construe the law to be that once having secured jurisdiction over a cause of action, whether *in rem* or *in personam*, the court thereby has jurisdiction over all the claims which the parties might have relating to the same subject matter. This assumption is erroneous. Each claims' legal basis and type of relief must be analyzed separately as to the issue of sovereign immunity. *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1172 (9th Cir. 2010).

*3. The "In rem" Claims*

Though Wapato Heritage has not specifically pleaded its action as one in rem and has not in its brief analyzed each of its claims separately, it appears to the court the only claims asserted by Wapato Heritage which could <u>*arguably*</u> be characterized as *in rem* (or *quasi in rem,* if there is a distinction) are: 1) the first Cross- claim seeking a declaration of its own and all landowners' respective rights in MA-8 (¶ 257) and a declaration that the MA-8 landowners are tenants in common (¶ 260); 2) the second Crossclaim for "quiet title" 3) the ejectment

ORDER - 16

claim (fourth Crossclaim) against the Tribe[3]; and 4) the seventh Crossclaim for partition of the property. Adjudicating these claims would require the court to determine possessory and ownership interests in MA-8.

Wapato Heritage admits in its Response that its *in rem* claims would only involve the Tribe if MA-8 is freely alienable, privately owned (in part by the Tribe), land held in fee simple. As indicated above, whether that is the case is now in dispute in this action. The questions of whether these claims can be decided *in rem*, whether the court has authority to decide them, and the Tribe's sovereign immunity to such claims must therefore be ongoing inquiries, rather than a determination made at this time.

The court will not decide these specific matters until Wapato Heritage has filed an amended pleading complying with Fed.R.Civ.P. 8(a) and until these issues have been properly presented and fully briefed to the court.

**III. Conclusion**

The Tribe's Motion to Dismiss (**ECF No. 210**) is **GRANTED IN PART** and **DENIED IN PART** with leave to renew.

The Tribe's Motion is GRANTED as to Plaintiffs' sole remaining claim against the Tribe. Plaintiffs have failed to satisfy their burden of establishing that their claim against the Tribe falls within an unequivocally expressed waiver of sovereign immunity or abrogation thereof by Congress. Plaintiffs' single claim for equitable relief against the Tribe, is not an action *in rem*. Accordingly, Plaintiffs' claim against the Tribe must therefore be dismissed pursuant to Rule 12(b)(1). *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

---

[3] *See Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1046 (9th Cir. 2011)(describing the conflicting characterizations of ejectment actions as *in rem*, *in personam* and quasi *in rem*).

ORDER - 17

Wapato Heritage has also failed to satisfy its burden of establishing that their *in personam* Crossclaims (Crossclaims 3 and 5) fall within a waiver of sovereign immunity. Accordingly, as to Wapato Heritage's Crossclaim 3 and 5, the Tribe's Motion to Dismiss is GRANTED.

The Tribe's Motion is DENIED *with leave to renew* as to Wapato Heritage's other Crossclaims asserted against the Tribe. These claims will be held in abeyance pending the filing of an amended pleading no later than **March 5, 2012** by Wapato Heritage and a determination of the status and ownership of MA-8.

Dated February 15, 2012.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
