FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 19, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL GRONDAL, a Washington resident; MILL BAY MEMBERS ASSOCIATION, INC., a Washington non-profit corporation, | NO:  2:09-CV-18-RMP |
| Plaintiffs, | ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS |
| v. | |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF INTERIOR; BUREAU OF INDIAN AFFAIRS; FRANCIS ABRAHAM; CATHERINE GARRISON; MAUREEN MARCELLAY, MIKE PALMER, also known as Michael H. Palmer; JAMES ABRAHAM; NAOMI DICK; ANNIE WAPATO; ENID MARCHAND; GARY REYES; PAULWAPATO, JR.; LYNN BENSON; DARLENE HYLAND; RANDY MARCELLAY; FRANCIS REYES; LYDIA W. ARMEECHER; MARY JO GARRISON; MARLENE MARCELLAY; LUCINA O'DELL; MOSE SAM; SHERMAN T. WAPATO; SANDRA COVINGTON; GABRIEL MARCELLAY; LINDA | ORDER DENYING WAPATO HERITAGE'S MOTION TO TRANSFER OR FOR PARTIAL SUMMARY JUDGMENT

ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS WAPATO HERITAGE'S REMAINING CLAIMS |

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 1

MILLS; LINDA SAINT; JEFF M.
CONDON; DENA JACKSON; MIKE
MARCELLAY; VIVIAN PIERRE;
SONIA VANWOERKON; WAPATO
HERITAGE, LLC; LEONARD
WAPATO, JR.; DERRICK D.
ZUNIE, II; DEBORAH L.
BACKWELL; JUDY ZUNIE;
JAQUELINE WHITE PLUME;
DENISE N. ZUNIE;
CONFEDERATED TRIBES
COLVILLE RESERVATION; and
ALLOTTEES OF MA-8, also known
as Moses Allotment 8,

                              Defendants.

BEFORE THE COURT is the Confederated Tribes of the Colville

Reservation's Motion to Dismiss, ECF No. 274, Wapato Heritage LLC's Motion for

Transfer Pursuant to 28 U.S.C. § 1631 or for Partial Summary Judgment, ECF No.

572, and the Federal Defendants' Motion to Dismiss Wapato Heritage, LLC's

Remaining Crossclaims, ECF No. 570.

On December 10, 2020, the Court heard oral argument on the Federal

Defendants' Motion to Dismiss, ECF No. 570.  The Federal Defendants were

represented by Assistant United States Attorney Joseph Derrig.  Nathan J. Arnold

appeared on behalf of Wapato Heritage, LLC ("Wapato Heritage").  Brian W.

Chestnut appeared on behalf of the Confederated Tribes of the Colville Reservation

("Colville Tribes").  The Court has reviewed the motions, the record, heard oral

argument, and is fully informed.

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION'S MOTION TO DISMISS . . .  ~ 2

**BACKGROUND**

In 1984, the Colville Agency, on behalf of the BIA, approved Lease No. 82-21 ("the Master Lease"), leasing MA-8 in its entirety to Mr. William Evans for a period of twenty-five years.  ECF No. 574-2.

In 1993, Evans, as Lessee, sublet a portion of MA-8 to the Colville Tribal Enterprise Corporation ("CTEC"), an instrumentality of the Confederated Tribes of the Colville Reservation, for a casino (the "Casino Sublease.").  ECF No. 574-3.  In 1994, a second sub-lease was entered between Evans and the CTEC when the casino opened.  ECF No. 574-4.

When Evans died in 2003, his leasehold interest as the Lessee of MA-8 was acquired by Wapato Heritage, LLC.  ECF No. 144 at 9.  As of 2005, Wapato Heritage possesses a life estate in Evans's MA-8 allotment interest (approximately 23.8% of MA-8) with the remainder reverting to the Confederated Tribes of the Colville Reservation.  *Id*. at 9 n. 3; *see* ECF No. 606-1 (Order Approving Settlement Agreement on November 9, 2005, *In the Matter of the Estate of William Wapato Evans*).

Under the terms of the Master Lease, Evans, as Lessee, was required to perform and provide an audit and provide the results to the individual allotees, as Lessors, in addition to the Secretary of the BIA.  ECF No. 574-2 at 6–7.  The audits were required to be performed by a Certified Public Accountant "who must not be an employee of the Lessee."  *Id.*

In 2005, the BIA, through the Sells Group, P.S., performed an agreed upon accounting review under the Master Lease and Casino Subleases. ECF Nos. 228 at 25, 230 at 8. The Sells Group created a December 29, 2005 written report which was provided to the BIA in January 2006. ECF No. 574-1. The BIA allegedly did not immediately send a copy of the Report to Wapato Heritage. ECF No. 230 at 9. Wapato Heritage made a Freedom of Information Act request and received a copy of the Sells Group's report in 2007. ECF No. 574-5.

Wapato Heritage alleges that the report shows that from 1984–2003 Mr. Evans overpaid the BIA under the Master Lease in the amount $751,285. ECF No. 228 at 25; 574-1 at 4. The monies from the overpayments were allegedly paid to the individual allottees. ECF No. 589 at 3. Wapato Heritage further alleges that the report shows that from 1994–1998 Mr. Evans was underpaid $886,248 by CTEC under the Casino subleases. ECF No. 228 at 25, 574-1 at 7.

In *Wapato I*, the Court determined that the Master Lease expired as of February 2009. *Wapato Heritage, L.L.C. v. United States*, No. 08-cv-177-RHW, 2008 WL 5046447, at *3 (E.D. Wash. Nov. 21, 2008) *aff'd by Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033 (9th Cir. 2011). Furthermore, the Court determined that the BIA is not a party to leases of this kind. *Wapato Heritage*, 2008 WL 5046447, at *5. The Court also determined that the BIA had not breached a fiduciary duty by failing to review a proposal by Wapato Heritage for a 99-year replacement lease where no such duty was owed to Wapato Heritage. *Wapato*

*Heritage, L.L.C. v. United States*, No. CV–08–177–RHW, 2009 WL 3782869, at *3–4 (E.D. Wash. Nov. 6, 2009) ("Plaintiff is simply in no position to enforce the Indian landowners' rights as beneficiaries of that trust.").

In March 2009, the BIA and the Colville Tribes allegedly entered into a lease for MA-8 (the "Colville Lease"). ECF No. 589 at 4. Wapato Heritage claims it was neither given notice nor an opportunity to vote on the grant of that lease. *Id*. at 4–5.

Wapato Heritage claims that the Colville Tribes has operated its casino on MA-8 continuously without the payment of rent to Wapato Heritage since February 9, 2009. ECF No. 228 at 26. Wapato Heritage also alleges that the BIA has not taken any steps to collect from CTEC the alleged deficiency in rent payments due under the Casino Subleases. ECF No. 230 at 9.

On March 26, 2010, Wapato Heritage asserted crossclaims against the Federal Defendants and the Colville Tribes, expanding the scope of the present matter beyond the use of the Mill Bay RV Resort site on MA-8 to monies due under the Master Lease and Casino Sublease. ECF Nos. 170, 228 (Amended). The crossclaims are as follows: (1) Declaratory Relief against all Defendants; (2) Ejectment and/or Wrongful Detainer against all Defendants; (3) Overpayment under Master Lease against all Defendants; (4) Underpayment under Casino Sublease and Failure to Collect against the Federal Defendants; (5) Partition against all Defendants; and (6) Attorney fees and costs against all Defendants. ECF No. 534.

On September 4, 2013, the Chelan County Superior Court entered an Ex Parte Order Making Technical Correction to Final and Binding Settlement Agreement in *In Re the Matter of the Estate of William Wapato Evans, Jr.  See* ECF No. 616-1. The Order states that "[a]ll choses in action, actual or potential, existing at the time of the decedent's death . . . [that] were not specifically dealt with in the 2005 Settlement Agreement, or the Final Agreement, or otherwise by orders of this court and they therefore have remained undistributed property of the estate." *Id*. at 5. Furthermore, the Order stated that "any such claim, made in the name of Wapato Heritage, LLC, . . . shall be, and hereby is, deemed in all respects to have been made in the name and stead of the above entitled estate, nunc pro tunc, to the later of the date of the claim, or the date of the 2005 Settlement Agreement." *Id*.

## LEGAL STANDARD

Dismissal of a complaint is proper where the plaintiff fails to state a claim upon which relief can be granted or the court lacks jurisdiction over the suit or the parties.  Fed. R. Civ. P. 12(b)(1), (2), (6).  A motion to dismiss brought pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on such a motion, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 6

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion to dismiss without converting the motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, the court may "consider certain materials or documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 324 F.3d 903, 908 (9th Cir. 2003). A court "may take judicial notice on its own" at any stage of the proceeding. *See* Fed. R. Evid. 201(c), (d).

Where a motion to dismiss is converted into a motion for summary judgment, the latter is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

### I.     Colville Tribes' Sovereign Immunity

Wapato Heritage's crossclaim for underpayment under the Casino Subleases is asserted against all Defendants, including the Colville Tribes. ECF No. 228 at 30. The Court dismissed the Colville Tribes with respect to crossclaim five seeking recovery of the alleged overpayments made under the Master Lease. *See* ECF No. 227 at 16–18. Wapato Heritage also seeks declaratory relief based on the theory that

the 2009 Casino Replacement Lease between the BIA, on behalf of the MA-8 allottees, and the CTEC is void *ab initio*.  ECF No. 228 at 27–28.

"Absent express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress, tribes cannot be sued." *Stock West Corp. v. Lujan*, 982 F.2d 1389, 1398 (9th Cir. 1993).  "Waivers of tribal sovereign immunity may not be implied." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006).

The Colville Tribes argue that tribal sovereign immunity bars any remaining crossclaims asserted against the Tribes, thereby requiring the Tribes' dismissal. ECF No. 571 at 11.  Wapato Heritage maintains that the Colville Tribes waived sovereign immunity pursuant to language in the original Casino Sublease and Replacement Lease, as well as through its involvement in this litigation.  *See* ECF No. 577.

## 1. Waiver by Contract

### a) Claims for Damages

Wapato Heritage argues that the Tribes expressly waived sovereign immunity for damages claims in the 1993 Casino Sublease between Evans and the CTEC. ECF No. 577 at 5–6.  Pursuant to the Casino Sublease:

> CTEC, solely for the purpose of this sublease, hereby waives sovereign immunity with respect to the enforcement of all of the terms of this sublease by Evans and consents to the entry of a money judgment and payment of the same if such should be appropriate under the facts . . . .

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 8

> This waiver is strictly limited to the enforcement of the covenants contained in this sublease.

ECF No. 90-4 at 29.  The Casino Sublease further provides:

> Both Evans and CTEC consent and agree that any disagreement or controversy as between the parties that they are unable to settle between themselves shall be submitted and tried in the Colville Tribal Court . . . .  Both parties agree that said Colville Tribal Court has exclusive jurisdiction of said dispute and consent to the court's jurisdiction.

*Id.*

The Colville Tribes maintain that any purported waiver in the 1993 Casino Sublease is inapplicable because the Colville Tribes, a federally recognized sovereign Indian nation, and the CTEC, a Tribally chartered corporate entity, are not coextensive and the CTEC cannot waive the Tribes' sovereign immunity.  ECF No. 588 at 4.

"[T]ribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself."  *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008).  The Colville Tribes own and control all tribal governmental corporations created by the Colville Business Council, including CTEC, under chapter 7-1 of the Colville Tribal Code (CTC).  *See Wright v. Colville Tribal Enter. Corp.*, 159 Wash.2d 108, 110, 147 P.3d 1275, 1277 (2006).

Whereas it is undisputed that CTEC is entitled to sovereign immunity, the parties dispute whether CTEC's waiver of sovereign immunity simultaneously acts as a waiver of the Tribes' sovereign immunity.  The Court finds it does not.  Chapter

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . . ~ 9

7–1 CTC provides that "[n]o entity including any subsidiary entity formed under this Chapter shall assert the Tribes' sovereign immunity in any court . . . without consent . . . ."[1]  Accordingly, "Chapter 7–1 CTC neither waives the immunity of tribal government corporations nor permits tribal government corporations to waive their own immunity." *Wright*, 159 Wash.2d at 115, 147 P.3d at 1280.  Where CTEC cannot waive its own immunity, it follows that any waiver is limited to CTEC and does not extend to the Tribes.

This is reinforced upon comparing the 1993 Casino Sublease with the 2014 Replacement Lease.  *See* ECF Nos. 90-4, 578-1.  The waiver of sovereign immunity in the 1993 Casino Sublease lists the CTEC only.  *See* ECF No. 90-4 at 29.  However, the waiver of sovereign immunity in the 2014 Replacement Lease lists "the Tribes and Lessee," the Colville Tribal Federal Corporation (CTFC).  ECF No. 578-1 at 4.

Even if the waiver of sovereign immunity in the 1993 Casino Sublease was applicable to the Colville Tribes, the Court does not agree with Wapato Heritage that the forum selection clause "does not purport to modify or constrain the waiver of sovereign immunity."  ECF No. 577 at 6.  The Sublease provides that "[b]oth Evans

---

[1] CTC Chapter 7-1 is available at: https://static1.squarespace.com/static/572d09c54c2f85ddda868946/t/5824b1ae197 aea06e0c01930/1478799791309/7-1%2BGvt%2Bcorp%2Band%2BLLC.pdf (last visited Jan. 7, 2021).

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 10

and CTEC consent and agree that any disagreement or controversy as between the parties . . . shall be submitted and tried in the Colville Tribal Court . . . . "  ECF No. 90-4 at 29.  Reading the provisions together only supports a limited waiver of sovereign immunity for claims asserted in Tribal Court.  *See Demontiney v. U.S. ex. rel. Dept. of Interior, Bureau of Indian Affairs*, 244 F.3d 801, 813 (9th Cir. 2001).

Accordingly, the Court finds that the Colville Tribes have not waived sovereign immunity by contract as to Wapato Heritage's claims for damages.

**b) Claims for Declaratory Relief**

Wapato Heritage also argues that the Colville Tribes clearly waived its sovereign immunity in the 2014 Casino Replacement Lease and this waiver covers Wapato Heritage's claims for declaratory relief arising under the 2009 Casino Replacement Lease.  ECF No. 577 at 6.  The 2014 Lease provides:

> Except as expressly provided in this Article, the Tribes and Lessee do not waive their respective sovereign immunity regarding any asserted claims, controversies, demands, or disputes (collectively "claims") arising out of or relating to this Lease.  Any such claims will be resolved as provided in this Article, and brought within one year after a Party's actual knowledge of the claims it asserts.
>
> The Tribes and Lessee hereby waive their respective sovereign immunity for the purpose of enforcing compliance with these dispute resolution provisions and enforcing or confirming any such award, but for no other purpose . . . .  This waiver does not apply to violation of regulations or other performance requirements and does not extend to any other claim or form of relief.

ECF No. 578-1 at 11–12.

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . . ~ 11

Based on the plain language of the 2014 Replacement Lease and contrary to Wapato Heritage's representations, the Tribes and CTFC did not expressly waive their respective sovereign immunity for claims seeking declaratory relief. *See id*. Any waiver in the 2014 Replacement Lease is expressly limited. Furthermore, any waiver in the 2014 Replacement Lease is irrelevant to claims asserted in 2010 for declaratory relief related to the 2009 Replacement Lease. Moreover, as the Court has discussed supra, the 2009 Replacement Lease did not waive sovereign immunity. ECF Nos. 200 at 13–15, 202 at 1–11.

Accordingly, the Court finds that the Colville Tribes have not waived sovereign immunity by contract as to claims seeking declaratory relief.

**2. Waiver by Litigation Conduct**

Wapato Heritage argues that even if the Colville Tribes did not waive sovereign immunity by contract, which the Court finds that it did not, the Tribes' conduct in this matter constitutes a waiver based on the Ninth Circuit's "progressive [ ] approach to waiver of Tribal Sovereign Immunity by litigation conduct." ECF No. 577 at 7.

Certain litigation conduct may constitute a waiver. For example, tribal immunity may be waived where a tribe successfully intervenes as a party-plaintiff. *See United States v. State of Or.*, 657 F.2d 1009, 1014 (9th Cir. 1981) (finding that a party "makes himself vulnerable to complete adjudication by the federal court of the issues in litigation between the intervener and the adverse party.") (quoting 3B

Moore's Federal Practice P 24.16(6), at 24-671 (2d ed. 1981)).  A Tribe does not

clearly and unequivocally express its intent to waive its immunity from suit by

simply removing a case from state to federal court.  *See Bodi v. Shingle Springs*

*Band of Miwok Indians*, 832 F.3d 1011, 1017 (9th Cir. 2016).  Furthermore, "[a]

tribe does not waive its sovereign immunity from actions that could not otherwise be

brought against it merely because those actions were pleaded in a counterclaim to an

action filed by the tribe."  *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian*

*Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *see In re Greektown Holdings, LLC*,

917 F.3d 451, 466 (6th Cir. 2019) (holding that filing a lawsuit constitutes a limited

waiver as to the court's decision on the claims brought by the Tribe, but not as to

separate, adversarial counterclaims brought against the Tribe).

Wapato Heritage argues that Colville Tribes' "role in this litigation has been

pervasive and present in each issue before the [C]ourt" and the Tribes have "sought

and obtained affirmative relief."  ECF No. 577 at 10–11.  The Court rejects Wapato

Heritage's arguments for two reasons.  First, the Court finds that Wapato Heritage

has overstated the case law in support of "the progressive [ ] approach to waiver of

Tribal Sovereign Immunity by litigation conduct."  Even where the tribe files an

action, any waiver to sovereign immunity is limited.  *See In Re Greektown Holdings,*

*LLC*, 917 F.3d at 466 (citing *Okla. Tax. Comm'n*, 498 U.S. at 509).

Second, upon review of the record, the Court does not find that the Colville

Tribes' participation in the present litigation amounts to "sufficiently clear litigation

conduct" constituting a waiver of sovereign immunity.  Rather, the Colville Tribes have asserted its sovereign immunity from the outset.  *See* ECF No. 227 at 18 ("Wapato Heritage has also failed to satisfy its burden of establishing that their *in personam* Crossclaims . . . fall within a waiver of sovereign immunity.").  Wapato Heritage points to several filings by the Colville Tribes regarding certain issues arising in this case, including representation and trespass, as evidence of "clear litigation conduct" amounting to a waiver of sovereign immunity.  *See* ECF Nos. 339, 441, 469, 537, 561.  However, the Court specifically requested supplemental briefing on the issue of individual representation for the individual allotees.  *See* ECF No. 389.  With respect to the Motion for Summary Judgment for Ejectment, the Court again directed any party to submit supplemental briefing that identified new, relevant precedent or facts that were not previously briefed.  *See* ECF No. 411. Contrary to Wapato Heritage's arguments, the doctrine of sovereign immunity does not preclude any and all participation by a tribe in an action to which it is a named party.

Accordingly, the Court finds that the Colville Tribes have not waived sovereign immunity by litigation conduct.  Because the Colville Tribes are entitled to sovereign immunity, the Tribes' motion to dismiss Wapato Heritage's crossclaims as against the Tribes is granted.

//

## II.    Wapato Heritage's Motion to Transfer

The parties concur that the Court should resolve Wapato Heritage's Motion for Transfer pursuant to 28 U.S.C. § 1631 prior to determining the merits of the Federal Defendants' motion for dismissal.

Pursuant to 28 U.S.C. § 1631, where the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."  Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice.  *See Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir. 1989).

In general, "transfer will be in the interest of justice because normally dismissal of an action that could have been brought elsewhere is time-consuming and justice-defeating."  *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990).  A transfer is also in the interest of justice if the "failure to transfer would prejudice the litigant and whether the litigant filed the original action in good faith."  *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001).  However, where no colorable claim for relief has been shown, transfer is improper because the interests of justice

would not be served by transfer of such a case. *Clark v. Busey*, 959 F.2d at 808, 812, 814 (9th Cir. 1992).

The Federal Defendants argue that transfer to the Federal Court of Claims is improper for the following reasons: (1) The Court of Federal Claims does not have jurisdiction over Wapato Heritage's crossclaims; and (2) even if the Court of Claims has jurisdiction, transfer would not be in the interest of justice because Wapato Heritage has failed to state a colorable claim for relief.

For the reasons discussed below, the Court finds that transfer of Wapato Heritage's claims to the Federal Court of Claims is improper. Specifically, the Court finds:

1. The Federal Court of Claims would not have jurisdiction over Wapato Heritage's claim for overpayment, framed as a breach of contract issue, because the United States is not a party to the Master Lease.

2. Wapato Heritage failed to state a colorable claim for breach of trust related to alleged underpayments made by CTEC from 1994–1998, because Wapato Heritage has failed to provide any reference to substantive law giving rise to a duty owed by the BIA to ensure the accuracy of payments, thereby depriving the Court of Claims of jurisdiction. *See United States v. Navajo Nation*, 537 U.S. 488, 503 ("Although the Indian Tucker Act confers jurisdiction upon the Court of Federal Claims, it is not itself a source of substantive rights."); *see also Cohen's Handbook of Indian Law*, §5.05 (Nell Jessup Newton ed., 2017)

[hereinafter "Cohen's Handbook"] ("[I]n a breach of trust case, failure to state a claim will also result in lack of jurisdiction.").

3. Wapato Heritage failed to state a colorable breach of trust claim for the BIA's alleged failure to inform and collect payments after receipt of the Sells Report. Wapato Heritage has not shown that it is the real party in interest for a claim based on a fiduciary relationship between the BIA and Evans where such relationship was premised upon Evans's status as an Indian landowner.

The Court addresses each finding in detail below.

## 1. Breach of Contract

The Federal Defendants argue that Wapato Heritage's overpayment claim may not be properly transferred for want of jurisdiction. ECF No. 592 at 8.

The Tucker Act provides for jurisdiction in the Court of Federal Claims for certain claims brought against the United States. Pursuant to the Tucker Act, "the United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Little Tucker Act provides for concurrent district court jurisdiction over "[a]ny civil action or claim against the United States, not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2).

The Tucker Act and the Little Tucker Act, read together, "provide for jurisdiction solely in the Court of Federal Claims for Tucker Act claims against the

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . . ~ 17

United States seeking more than $10,000 in damages." *McGuire v. United States*, 550 F.3d 903, 910–11 (9th Cir. 2008) (citing *United States v. Hohri*, 482 U.S. 64, 67 n. 1 (1987)).  Wapato Heritage requests the entry of a money judgment in the sum of $ 751,285, well in excess of the $10,000 jurisdictional amount.

The Tucker Act's counterpart for Indian claims is the Indian Tucker Act, 28 U.S.C. § 1505.  The Indian Tucker Act extends the Court of Federal Claims' jurisdiction to

> any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.

The United States' exercise of its trust responsibilities on behalf of Indian beneficial landowners "does not necessarily involve the assumption of contractual obligations."  *United States v. Algoma Lumber Co.,* 305 U.S. 415, 421 (1939).  Courts have rejected a "trust theory of liability as a means of holding the United States contractually liable to third parties when it acts on behalf of Indians."  *Sangre de Cristo Dev. Co. v. United States*, 932 F.2d 891, 895–96 (10th Cir. 1991).  Unless the United States is a party to the contract, there is no privity of contract between the United States and claimants, and thus no jurisdiction in the Court of Federal Claims under the Tucker Act.  *See, e.g.*, *Moody v. United States*, 931 F.3d 1136, 1140 (Fed. Cir. 2019) (finding Court of Federal Claims lacked Tucker Act

jurisdiction over lessee's breach of contract claims against United States, notwithstanding trust relationship between United States and tribe, because United States was not a party to the leases). The Federal Circuit Court in *Moody* cited to *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033 (9th Cir. 2011) in support of its finding that because the United States was not a party to the leases, the Federal Court of Claims lacked jurisdiction. *Wapato I*, 637 F.3d at 1037 ("[T]he BIA's obligations to act in furtherance of Native American interests does not mean that the BIA per se assumes their contractual obligations when it acts on their behalf.").

To the extent Wapato Heritage seeks an award of damages for an alleged breach of contract, transfer of Wapato Heritage's crossclaim for overpayment under the written leases is improper for two reasons. First, as decided in *Wapato I*, the BIA was not the Lessor of the Master Lease, and the BIA's managerial control over MA-8 does not per se make the BIA a party to contracts involving MA-8 lands. 637 F.3d at 1038–39. Wapato Heritage cannot seek relief for the BIA's alleged breach of a contract where the BIA is not a party to the contract.

Second, although the claim is asserted against all defendants except the Colville Tribes, Wapato Heritage specifically "requests the entry of a money judgment against Defendants allottees, jointly and severally, for the amount due under the terms of the Master lease, as reported by the Sells Report in the sum of $751,2825, together with prejudgment interest thereon at the applicable federal or state rate." ECF No. 228 at 30, 32 ("For judgment against all other owners of MA-8

for receipt of overpayments inconsistent with the terms of the Master Lease").
Wapato Heritage's overpayment claim does not specifically seek a judgment
"against the United States." 28 U.S.C. § 1491(a)(1).

Accordingly, the Court of Federal Claims could not have exercised
jurisdiction at the time the action was filed, because Wapato Heritage's claims seek
recovery of the alleged overpayments as a breach of contract claim where (1) the
United States is not privy to the contract at issue, and (2) judgment is sought against
parties that are not the United States. Transfer of Wapato Heritage's overpayment
claim based on an alleged breach of contract is thus improper. 28 U.S.C. § 1631.

## 2. Breach of Trust

### a) Duty

In addition to the alleged overpayment made by Mr. Evans, Wapato Heritage
seeks an order which compels the BIA, "in its capacity as a fiduciary for the MA-8
owners," to immediately collect monies allegedly due from the Confederated Tribes
of the Colville Reservation due under the Casino Subleases between Evans and the
CTEC. ECF No. 228 at 30.

To state a litigable breach of trust claim against the Government under the
Indian Tucker Act, "a tribal plaintiff must invoke a rights-creating source of
substantive law that 'can fairly be interpreted as mandating compensation by the
Federal Government for the damages sustained.'" *Navajo Nation*, 537 U.S. at 503
(quoting *United States v. Mitchell*, 463 U.S. 206, 218 (1983) ("*Mitchell II*")). This is

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION'S MOTION TO DISMISS . . . ~ 20

referred to as a "money-mandating duty." *United States v. Navajo Nation*, 556 U.S. 287, 300 (2009).

Under the two-part test for determining jurisdiction under the Indian Tucker Act, the claimant must first [1] "identify a substantive source of law that establishes specific fiduciary or other duties, and [2] must allege that the Government has failed to faithfully perform those duties." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). If the statute upon which plaintiff relies does not impose upon the government a duty which gives rise to a claim for money damages, then the Federal Court of Claims lacks subject matter jurisdiction over the claim. *Adair*, 497 F.3d 1244, 1251 (Fed. Cir. 2007). However, "[i]f a fair reading of the applicable statues and regulations indicates that Congress intended the government to act as a fiduciary with regard to the issue at hand, and a money damages remedy would compensate the tribe for breach of trust duties, jurisdiction will lie under the Tucker Act." *Cohen's Handbook of Federal Indian Law* § 5.05 (citing *Navajo Nation*, 537 U.S. at 506; *Mitchell*, 463 U.S. at 219). "[I]n a breach of trust case, failure to state a claim will also result in lack of jurisdiction." *Cohen's Handbook of Indian Law*, §5.05.

A statute or regulation that recites a general trust relationship between the United States and the Indian People is not enough to establish any particular trust duty. *United States v. Mitchell,* 445 U.S. 535, 542–44 (1980) (holding that General Allotment Act created only a limited trust relationship and does not impose fiduciary duties upon Government as to the management of timber resources on allotted

lands); *compare with Mitchell II*, 463 U.S. at 224 (finding that, in contrast to bare trust created by the General Allotment Act, additional statutes and regulations imposed money-mandating duties on the Government who was liable for the breach of those duties).

Although a general trust relationship between the United States and the Indian people may reinforce the conclusion that the relevant statute or regulation imposes fiduciary duties, that relationship alone is insufficient to support jurisdiction under the Indian Tucker Act.  *See Navajo Nation*, 537 U.S. at 506 (finding that Indian Mineral Leasing Act, which requires Secretarial approval before coal mining leases negotiated between Tribes and third parties become effective, did not give rise to fiduciary duties).  "The analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id.* at 506.

The Federal Defendants argue that Wapato Heritage has failed to identify the substantive source of law that can form the basis of a breach of trust action.  Wapato Heritage points to 25 C.F.R. § 162.108 (2009), part of the corresponding regulations to the Indian Long-Term Leasing Act[2], as establishing a regulatory responsibility imposed upon and allegedly breached by the BIA.  ECF No. 611 at 7–8.  In its

---

[2] The Indian Long-Term Leasing Act allows "[a]ny restricted Indian lands . . . [t]o be leased by the Indian owners, with the approval of the Secretary of the Interior, for public, religious, educational, recreational, residential, or business purposes." 25 U.S.C. § 415(a).

Motion to Transfer, Wapato Heritage cites to the 2009 version for purposes of the

Tucker Act inquiry as to whether the claim "could have been brought [in the Court

of Claims] at the time it was filed."  28 U.S.C. § 1491(a)(1).  ECF No. 611 at 8 n. 1.

At oral argument, Wapato Heritage maintained that its affirmative claims "are

for breaches of fiduciary duty that were breaches by the BIA during the actual life of

Mr. Evans."  However, in its amended crossclaim, Wapato Heritage alleges that the

BIA[3] breached fiduciary duties by failing to advise Wapato Heritage of the Sells

Report or its conclusions as well as failing to collect from the CTEC the deficient

amount in the payment of rent, after the life of Evans.  ECF No. 228 at 25.  Thus, it

is unclear whether Wapato Heritage's breach of trust claim is premised upon (i) the

BIA's alleged oversight at the time the underpayments were being made, or (ii) the

BIA's alleged inaction after receipt of the Sells Group's Report in 2006.

**(i) Underpayments (1994-1998)**

If Wapato Heritage's breach of trust claim is based on allegations that the BIA

failed to monitor, manage, or ensure that lease payments were correct during the

actual life of Mr. Evans, the relevant regulations would be those governing the

---

[3] As pleaded, Wapato Heritage asserts that "The Colville Agency and CTEC [not the BIA] failed to meet their fiduciary duties upon receipt of the Sells Report." ECF No. 228 at 25.  However, as the BIA initiated the Sells Group audit and received the subsequent Report, the Court infers that these allegations are made against the BIA.

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION'S MOTION TO DISMISS . . .  ~ 23

administration of the Lease from 1994–1998, when the alleged underpayments took place.  *See Confederated Tribes and Bands of Yakima Nation v. United States*, 89 Fed. Cl. 589, 605 (2009).  Wapato Heritage did not cite, and the Court has not found, a substantive source of law that established a specific fiduciary duty on the BIA to ensure the accuracy of payments during the relevant time period.  *See Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1345 (Fed. Cir. 2020) (affirming dismissal for failure to state a claim where plaintiff did not provide substantive law imposing duty consistent with the alleged breach by Government to collect requisite payments from purchaser).  There are no allegations that the tenants failed to pay; rather, the allegations are that those payments were made in inaccurate amounts.  *See Shoshone-Bannock Tribes of Fort Hall Reservation v. United States*, No. CV-02-009-E-BLW, 2006 WL 2949527 (D. Idaho, Oct. 16, 2006) (dismissing case because Plaintiffs did not allege that the Government failed to approve or cancel or lease, or that tenants failed to pay, but rather that the Government failed to timely disburse the lease payments which did not violate a specific statutory or regulatory duty imposed by 25 C.F.R. § 162.108).  Therefore, the Court agrees with the Federal Defendants that Wapato Heritage has failed to provide the relevant substantive law which imposed a specific fiduciary duty on the BIA to ensure accurate payments under the Casino Subleases from 1994–1998.

//

**(ii)Inform & Collect**

To the extent that that Wapato Heritage's breach of trust claim is based on the BIA's alleged failure to inform Wapato Heritage of the Sells Report's conclusions and subsequently collect monies from the CTEC, after the actual life of Mr. Evans, the regulation provided by Wapato Heritage, 25 C.F.R. § 162.108(a), was at least in effect when the alleged breach occurred in 2006.  Pursuant to 25 C.F.R. § 162.108(a), the BIA's responsibilities in administering and enforcing leases are as follows:

> We will ensure that tenants meet their payment obligations to Indian landowners, through the collection of rent on behalf of the landowners and the prompt initiation of appropriate collection and enforcement actions. We will also assist landowners in the enforcement of payment obligations that run directly to them, and in the exercise of any negotiated remedies that apply in addition to specific remedies made available to us under these or other regulations.

66 FR 7068-01, 2001 WL 47437.  There is an issue as to whether 25 C.F.R. § 162.108 creates a money-mandating duty to (1) inform and (2) collect.

However, the Court need not resolve this question, because any duties imposed by 25 C.F.R. § 162.108(a) are owed only to Indian landowners, which raises issues of standing.  *See* 25 C.F.R. § 162.003 (defining "Indian landowner" as "a tribe or individual Indian who owns an interest in Indian land."  The term "Indian" is defined as "a member of any Indian tribe, is eligible to become a member of any Indian tribe, or is an owner as of October 27, 2004, of a trust or restricted interest in land") *see also McGuire v. United States*, 550 F.3d 903, 910 n. 3

("[J]udicial economy and courtesy to transferee courts dictates that we resolve threshold issues first before invoking the transfer statute.").

### 3. Standing

Notwithstanding the issues concerning duty and breach, the Federal Defendants argue that even if there was a money-mandating duty owed, and even if there was an alleged breach of that duty, these duties were owed to Mr. Evans and subsequently his Estate, not to Wapato Heritage. Accordingly, the Federal Defendants assert that Wapato Heritage is not the real party in interest. ECF No. 592 at 9.

A claim by Wapato Heritage seeking relief for an alleged breach of duty owed to it by the BIA fails. "Wapato is a licensed Washington limited liability corporation, not a Native American or Native American tribe to whom the BIA owes a fiduciary duty." *Wapato Heritage, L.L.C. v. United States*, 423 F. App'x 709, 711 (9th Cir. 2011) (citing *United States v. Mitchell*, 463 U.S. 206, 226 (1983)). Although Wapato Heritage claims that this Court's previous finding as to its fiduciary status is now "entirely inapplicable," the Court finds that the circumstances have not changed since 2011 and the fact that the BIA does not owe Wapato Heritage fiduciary duties is still accurate. *See* ECF No. 589 at 19 n. 3.

Wapato Heritage argues that its claims are asserted on behalf of Mr. Evans and his Estate and that "[t]he BIA owes Wapato Heritage for breach of its fiduciary duties related to both the underpayment and overpayment claims." ECF No. 589 at

15, 17.  But Wapato Heritage also interchangeably maintains that it is the real party in interest because it inherited these claims from Mr. Evans and the personal representative of Mr. Evans's Estate assigned or distributed these claims to Wapato Heritage.  ECF No. 619 at 3.

Pursuant to Fed. R. Civ. P. 17(a), an action must be prosecuted in the name of the real party in interest.  The real party in interest is determined at the time the complaint is filed.  *See, e.g.*, *United States for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074–75 (9th Cir. 1989).  A subsequent assignment does not cure the real party in interest problem.  *Id*.  Similarly, "[t]he existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint."  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

At oral argument, Wapato Heritage argued that its claims were "inherited from an actual Indian related to his property rights against the federal government." Wapato Heritage argues that "[a]s the inheritor of Evans's lease interests, Wapato Heritage is the rightful owner of Evans's claims arising from the leases."  ECF No. 611 at 3.  However, inheriting a lease interest from an Indian does not mean that the devisee, a non-Indian corporation, is owed the same fiduciary duties by virtue of its interest in real property.

Wapato Heritage allegedly owns a life estate in Mr. Evans's residual estate. ECF No. 611 at 3; *see also* 361 at 14 ("The residue of my estate includes . . . trust property commonly referred to as MA-10 and MA-8.  It is my intent that at my

death, the residue of my estate specifically include any interest I may have in any Indian trust property, real or personal in nature, including rents, profits and personal property, beneficially titled name."). Wapato Heritage claims that the residual estate includes choses of action, and the breach of trust claim is one such chose in action.

Although the breach of trust claim is related to the Indian trust property, it is predicated on a fiduciary relationship between the BIA and Mr. Evans as an Indian landowner. Despite Wapato Heritage's assertion that rights and remedies "flow" to it due to its life estate interest in the trust property, the Court does not find that those rights and remedies include relief for an alleged breach of trust that was owed to Mr. Evans predicated on his being an individual Indian landowner.

An Ex Parte Order Making Technical Correction to Final and Binding Settlement Agreement was entered in Chelan County Superior Court on September 4, 2013, and addressed "all choses in action, actual or potential, existing at the time of the decedent's death in 2003." *See* ECF No. 616-1. Even if such claims were formally assigned to Wapato Heritage in 2013, this assignment does not support Wapato Heritage's position for two reasons.

First, a chose in action for an alleged breach of the duties to inform or collect did not accrue until 2006, after the BIA's receipt of the Sells Report; thus, it was neither an actual nor potential claim at the time of the decedent's death in 2003. Second, "[t]he existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d

at 838.  Wapato Heritage asserted its crossclaims in 2010, as amended in 2012.  ECF Nos. 170, 228.  There are no facts before the Court showing that the rights and remedies which flow to Mr. Evans as an Indian, and subsequently to his Estate, also flow to or were assigned to Wapato Heritage in 2010 when the crossclaims for underpayment or overpayment were initially asserted.  Although Wapato Heritage is a large beneficiary of Mr. Evans's Estate, and acquired a life estate of his property interest in MA-8 as of 2005, this does not mean that Wapato Heritage and the Estate are one and the same nor does it mean that the BIA owes identical fiduciary duties to Wapato Heritage that it may have owed to Mr. Evans.  ECF No. 606-1.

Finally, Wapato Heritage argues that, even if all rights had not already transferred, the Personal Representative could now assign the claim to Wapato Heritage.  ECF No. 611 at 3.  However, for purposes of standing, a subsequent assignment does not cure the real party in interest problem.  *United States for Use & Benefit of Wulff*, 890 F.2d at 1074–75.

Pursuant to Fed. R. Civ. P. 17(a)(3), "the court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  "The purpose of the rule is 'to prevent forfeiture of a claim when an honest mistake was made.'"  *Goodman v. United States*, 298 F.3d 1048, 1054 (9th Cir. 2002) (citation omitted).  "Rule 17 relief is available where counsel makes an 'understandable' error in naming the real party in interest."  *Id.* at

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 29

1053–54.  Wapato Heritage does not argue that it has made an error, let alone an understandable error.  Rather, it argues that potential claims belonging to Evans or his Estate also belong to Wapato Heritage.

Because Wapato Heritage has (1) failed to provide a substantive law giving rise to a duty owed by the BIA to ensure the accuracy of payments from 1994-1998 and (2) has failed to show that Wapato Heritage is the real party in interest for an alleged breach of duty to inform and collect upon the BIA's receipt of the Sells Report, Wapato Heritage lacks standing to bring the breach of trust claim[s].

In sum, the Court finds that transferring Wapato Heritage's affirmative crossclaims to the Federal Court of Claims is improper both for want of jurisdiction and for failure to state a colorable claim.  Accordingly, Wapato Heritage's motion for transfer pursuant to 28 U.S.C. § 1631 is denied.

**III.   Wapato Heritage's Concessions**

Wapato Heritage conceded at oral argument that pursuant to the law of the case doctrine, several of its crossclaims depend on a determination that MA-8 is not trust land.  *See Askins v. U.S. Dep't of Homeland Sec.,* 899 F.3d 1035, 1042 (9th Cir. 2018) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citation and internal quotations omitted). Having found that MA-8 is trust land, *see* ECF No. 503, the following crossclaims,

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 30

as conceded by Wapato Heritage, are barred by the law of the case doctrine and dismissed with prejudice:

1. First Crossclaim for Declaratory Relief, ECF No. 228 at 26–28 (¶¶ 267–273).

2. Fourth Crossclaim for Ejectment and/or Wrongful Detainer, ECF No. 228 at 29.

3. Seventh Crossclaim for Partition of MA-8, ECF No. 228 at 30.

The Court turns to the remaining crossclaims in light of the Federal Defendants' Motion to Dismiss, ECF No. 570, and Wapato Heritage's Motion for Partial Summary Judgment, ECF No. 572.

## IV.    Federal Defendants' Motion to Dismiss

The Federal Defendants seek dismissal of Wapato Heritage's remaining crossclaims. *See* ECF No. 570. Wapato Heritage argues that although Wapato Heritage's motion is brought as a motion to dismiss, the proper standard is under Fed. R. Civ. P. 56 because the parties have brought affidavits and evidence into the record. In replying to Wapato Heritage on its motion for dismissal, the Federal Defendants included an "Order Approving Settlement Agreement" by Indian Probate Judge Stancampiano in the matter of the estate of William Wapato Evans in support of its argument that Wapato Heritage is not the real party in interest for a claim of breach of fiduciary duties. ECF No. 606-1. No matter which standard is

applied, threshold issues dictate that Wapato's crossclaims fail as a matter of law and are subject to dismissal with prejudice.

## 1. Lack of Jurisdiction

The Federal Defendants argue that Wapato Heritage has not met its burden of establishing the Court's subject matter jurisdiction over each of its remaining crossclaims. ECF No. 570 at 2. The burden of establishing the court's subject matter jurisdiction rests upon the party seeking to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

However, in seeking transfer pursuant to 28 U.S.C. § 1631, Wapato Heritage purportedly concedes that this Court lacks jurisdiction. ECF No. 572 at 12 ("As the Federal Defendants point out, this Court lacks jurisdiction to hear, in full, the monetary dispute between the parties."); *see also Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir.1989) (Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice). Wapato Heritage maintains that the "Court of Claims [ ] holds full and exclusive jurisdiction over the remaining claims" and that the jurisdictional issue "may provide the parties to this action with some rare common ground." ECF No. 572 at 3, 101; *see Bowen v. Massachusetts*, 487 U.S. 879, 910 n. 48 (the Federal Court of Claims' "jurisdiction is 'exclusive' only to the extent that Congress has not

1    granted any other court authority to hear the claims that may be decided by the

2    Claims Court.").

3        In the alternative, Wapato Heritage asks this Court to enter a partial judgment

4    in its favor "*if* this Court has jurisdiction to hear the claims against the government."

5    ECF No. 572 at 12 (emphasis added).  The Supreme Court has rejected the "doctrine

6    of hypothetical jurisdiction," in which a federal court assumes jurisdiction for the

7    purpose of reaching the merits.  *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th

8    Cir. 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  It

9    is hard to reconcile Wapato Heritage's position that the "Court of Claims [ ] holds

10   full and exclusive jurisdiction over the remaining claims" with its simultaneous

11   request that this Court nonetheless proceed to the merits.  ECF No. 572 at 3.  In

12   arguing for the alternative relief of partial summary judgment, Wapato Heritage is

13   silent as to the basis for this Court to exercise subject-matter jurisdiction over its

14   remaining crossclaims for overpayment and underpayment.  "Federal court

15   jurisdiction over cases involving Indians and Indian affairs is not automatic."

16   *Cohen's Handbook* § 7.04.

17       In its First Amended Answer, Wapato Heritage asserted that "jurisdiction over

18   the claims regarding the gaming leases rest as against the U.S Parties in 28 U.S.C. §

19   1331 and/or 28 U.S.C. § 1346(a)(2) [the Little Tucker Act] and/or 28 U.S.C. § 1353

20   and/or 25 U.S.C. § 345."  ECF No. 228 at 19–20.

21

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION'S MOTION TO DISMISS . . .  ~ 33

Jurisdiction is conferred to federal district courts pursuant to 28 U.S.C. § 1353 over any "civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." Pursuant to 25 U.S.C. §345, the federal district courts have jurisdiction over claims brought by "all persons who are in whole or in part of Indian blood or descent" who are entitled or to be entitled to land under any allotment Act who bring suit in relation to their right thereto.  However, Wapato Heritage is not a person "in whole or in part of Indian blood or descent."  *See United States v. Preston*, 352 F.3d 352, 355–356 (9th Cir. 1965) (holding that § 365 confers no federal jurisdiction over suit by non-Indians).

As discussed above, 28 U.S.C. § 1346(a)(2), the Little Tucker Act, grants jurisdiction to district courts over actions against the United States not exceeding $10,000 in amount.  Wapato Heritage's remaining crossclaims seek recovery well in excess of $10,000.

Federal question jurisdiction under 28 U.S.C. § 1331 also confers jurisdiction to federal district courts over any action "arising under the Constitution, laws, or treaties of the United States."  "An action arises under federal law only if federal law 'creates the cause of action' or a 'substantial question of federal law is a necessary element' of a plaintiff's well-pleaded complaint."  *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052, 1055 (9th Cir. 2019) (citing *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1383 (9th Cir. 1988).  The

interpretation of federal law is central "to cases that involve whether a federal agency action is unlawful." *See Longie v. Spirit Lake Tahoe*, 400 F.3d 586, 590 (8th Cir. 2005) (citing *Goodface v. Grassrope*, 708 F.2d 335, 338 (8th Cir. 1983).

As noted above with respect to Wapato Heritage's claim for alleged breach of trust, there is an outstanding issue as to whether 25 C.F.R. § 162.108 creates a money-mandating duty to (1) inform and (2) collect. Thus, a substantial question of federal law is a necessary element of Wapato Heritage's crossclaim. However, for similar reasons as to why it is not in the interest of justice to transfer Wapato Heritage's affirmative crossclaims for overpayment and underpayment, the Court need not reach the merits of Wapato Heritage's motion for partial summary judgment.

### 2. Real Party in Interest

Even if 28 U.S.C. § 1331 were to provide this Court with a basis to exercise subject matter jurisdiction, Wapato Heritage's claims for overpayment and underpayment still fail at the outset.

First, with respect to Wapato Heritage's claim framed as a breach of contract claim seeking recovery of the alleged overpayments from the individual allottees, the BIA is not a party to the contract nor did it assume contractual obligations by virtue of its approval role. *See Wapato Heritage I*, 637 F.3d at 1038–1039. Therefore, there is no federal agency involved and no question about federal agency action.

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . . ~ 35

Second, with respect to Wapato Heritage's claim seeking recovery of the alleged underpayments framed as a breach of trust claim for the BIA's alleged failure to ensure accurate payments from 1994–1998, Wapato Heritage has failed to identify the substantive source of law in effect when the alleged breach occurred giving rise to relief.  *See Navarro Nation*, 537 U.S. at 506 ("The analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions.").

Finally, to the extent that Wapato Heritage seeks recovery of the alleged underpayments as recourse for an alleged breach of duty to inform and collect upon receipt of the Sells Report, any such duty would have been owed to Mr. Evans's person, due to his status as an Indian landowner, and not to Wapato Heritage. Standing "must be supported at each stage of the litigation in the same manner as any other essential element of the case."  *Syed v. M-I*, 853 F.3d 492, n.4 (9th Cir. 2017).

Wapato Heritage does not receive the full rights and remedies as an individual Indian simply because it holds a substantial interest in the related real property inherited from an individual Indian.  Accordingly, Wapato Heritage is not the real party in interest.

### 3. Declaratory Relief

Wapato Heritage's first crossclaim seeks various forms of declaratory relief, many of which are moot given this Court's finding that MA-8 is trust land as previously noted.  ECF No. 228 at 26–28.

1       However, Wapato Heritage also seeks a declaration that the 2009

2  Replacement Lease between the BIA and the Colville Tribes is *void ab initio*

3  because of the exclusion of Wapato Heritage from the acceptance process, as well as

4  declaration that Wapato Heritage is entitled to vote on any material action regarding

5  MA-8 and receive distributions from MA-8 revenue as a life tenant.  ECF No. 228 at

6  28.

7       The Declaratory Judgment Act, 28 U.S.C. § 2201, creates a remedy and is not

8  an independent basis for jurisdiction.  *Stock W., Inc. v. Confederated Tribes of the*

9  *Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  "To obtain declaratory

10  relief in federal court, there must be an independent basis for jurisdiction." *Id.*

11  Wapato Heritage has not provided a substantive jurisdictional basis for its remaining

12  requests for declaratory relief.  Even if there was federal court jurisdiction, Wapato

13  Heritage has failed to state a cognizable cause of action.

14       First, regarding Wapato Heritage's alleged exclusion from the approval

15  process of the 2009 Replacement Lease, pursuant to 25 C.F.R. § 162.010,

16  prospective lessees must "notify all Indian landowners and obtain the consent of the

17  Indian landowners of the applicable percentage of interests, under § 162.012."

18  Under 25 C.F.R. § 162.012, where 50 percent of the owners consent to a lease

19  document, "[t]hat lease document binds all non-consenting owners to the same

20  extent as if those owners also consented to the lease document."

21

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION'S MOTION TO DISMISS . . . ~ 37

Here, the lessee of the 2009 Replacement Lease was the Colville Tribal Federal Corporation, who is not a party in this matter. Wapato Heritage misdirects the purported failure to notify Wapato Heritage about the lease at the Colville Tribes. Even if the lessee had notified Wapato Heritage, there is no basis to void the 2009 Replacement Lease where (1) 50 percent of the owners consented to the lease document, as the evidence supports, and it was therefore binding on Wapato Heritage; and (2) the 2009 lease has since been replaced.

Second, Wapato Heritage's request for a declaration that it is entitled to distributions from MA-8 revenue is already established by relevant law. Pursuant to 25 C.F.R. § 179.101(b)(1), the Secretary must distribute all rents and profits, as income, to the life tenant. Wapato Heritage alleges that the CTEC has operated its casino located on MA-8 continuously without the payment of rent to Wapato Heritage since February 1, 2009. ECF No. 228 at 26. In asserting its crossclaims, Wapato Heritage sought a declaration that the Master Lease was in full force and effect, and subsequently that the Casino Subleases entered into between Mr. Evans and the CTEC were also in full force and effect, with rent from CTEC due thereunder. ECF No. 228 at 31. However, as the Ninth Circuit previously found, the Master Lease and the Casino Subleases expired in 2009. *See Wapato Heritage, LLC*, 637 F.3d at 1040. Therefore, CTEC does not owe Wapato Heritage rent as Lessee. There are no other allegations that Wapato Heritage has not received rents

and profits due aside from the monies sought for the alleged overpayments by Mr. Evans and the alleged underpayments owed to Mr. Evans.

Accordingly, the Court finds that Wapato Heritage's remaining requests for declaratory relief lack jurisdiction and a cognizable basis for relief.

## CONCLUSION

Therefore, the Court finds that the Colville Tribes' sovereign immunity dictates its dismissal as a defendant to Wapato Heritage's remaining crossclaims.  In any event, Wapato Heritage's crossclaims fail and must be dismissed with prejudice. Transfer to the Federal Court of Claims is improper because that Court would lack jurisdiction over Wapato Heritage's claim for an alleged breach of contract, and such transfer is not in the interest of the justice because Wapato Heritage is not the real party in interest for an alleged breach of trust claim.  Furthermore, Wapato Heritage similarly has failed before this Court to show that it has standing to bring its claims for monetary damages.

The Court need not grant leave to amend when amendment would be futile. *Gompper v. VISX, Inc*., 298 F.3d 893, 898 (9th Cir. 2002).  The Court concludes that amendment would be an exercise in futility with respect to any alleged breach of contract claim by Wapato Heritage against the United States.  The Court further concludes that amendment would be an exercise in futility with respect to any alleged breach of trust claim by Wapato Heritage based upon the BIA's purported failure to ensure the accuracy of payments from 1994–1998.  Finally, Wapato

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS . . .  ~ 39

Heritage is not the real party in interest for a potential breach of trust claim premised upon the BIA's alleged inaction after it received the Sells Report. Since Wapato Heritage has failed to show an understandable error, it is not entitled to relief otherwise available under Fed. R. Civ. P. 17(a)(3). *Goodman*, 298 F.3d at 1054.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Confederated Tribes of the Colville Reservation's Motion to Dismiss, **ECF No. 274**, is **GRANTED**. The Confederated Tribes of the Colville Reservation is **dismissed** as a defendant from Wapato Heritage's crossclaims.

2. Wapato Heritage's Motion to Transfer Pursuant to 28 USC § 1631 or for Partial Summary Judgment, **ECF No. 572**, is **DENIED**.

3. The Federal Defendants' Motion to Dismiss, **ECF No. 570**, is **GRANTED**. Wapato Heritage's remaining crossclaims are **DISMISSED WITH PREJUDICE**.

a) Wapato Heritage's First Crossclaim, seeking declaratory relief, is **DISMISSED WITH PREJUDICE**.

b) Wapato Heritage's Fourth Crossclaim for ejectment and/or wrongful detainer is **DISMISSED WITH PREJUDICE**.

c) Wapato Heritage's Fifth Crossclaim seeking overpayment under written leases is **DISMISSED WITH PREJUDICE**.

d)  Wapato Heritage's Sixth Crossclaim seeking damages for underpayment and failure to collect is **DISMISSED WITH PREJUDICE**.

e)  Wapato Heritage's Seventh Crossclaim seeking partition of MA-8 is **DISMISSED WITH PREJUDICE**.

f)  Since Wapato Heritage has failed to prevail on the aforementioned crossclaims, it is not entitled to attorney fees and costs as requested in crossclaim eight.  Accordingly, Wapato Heritage's Eighth Crossclaim is **DISMISSED WITH PREJUDICE**.

4.   Judgment of dismissal shall be entered with respect to Wapato Heritage's remaining crossclaims for declaratory relief, ejectment and/or wrongful detainer, overpayment, underpayment, partition, and attorney fees and costs.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment of dismissal on Wapato Heritage's remaining crossclaims, and provide copies to counsel and all parties in this matter.

**DATED** January 19, 2021.


　　　　　　　　　　　*s/ Rosanna Malouf Peterson*
　　　　　　　　　　ROSANNA MALOUF PETERSON
　　　　　　　　　　　United States District Judge

ORDER GRANTING CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION'S MOTION TO DISMISS . . . ~ 41