FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 17, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL GRONDAL, a Washington resident; MILL BAY MEMBERS ASSOCIATION, INC., a Washington non-profit corporation, | NO: 2:09-CV-18-RMP |
| Plaintiffs, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF INTERIOR; BUREAU OF INDIAN AFFAIRS; FRANCIS ABRAHAM; CATHERINE GARRISON; MAUREEN MARCELLAY, MIKE PALMER, also known as Michael H. Palmer; JAMES ABRAHAM; NAOMI DICK; ANNIE WAPATO; ENID MARCHAND; GARY REYES; PAULWAPATO, JR.; LYNN BENSON; DARLENE HYLAND; RANDY MARCELLAY; FRANCIS REYES; LYDIA W. ARMEECHER; MARY JO GARRISON; MARLENE MARCELLAY; LUCINDA O'DELL; MOSE SAM; SHERMAN T. WAPATO; SANDRA COVINGTON; GABRIEL MARCELLAY; LINDA MILLS; LINDA SAINT; JEFF M. | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

1  CONDON; DENA JACKSON; MIKE
   MARCELLAY; VIVIAN PIERRE;
2  SONIA VANWOERKON;
   LEONARD WAPATO, JR.;
3  DERRICK D. ZUNIE, II; DEBORAH
   L. BACKWELL; JUDY ZUNIE;
4  JAQUELINE WHITE PLUME;
   DENISE N. ZUNIE;
5  CONFEDERATED TRIBES
   COLVILLE RESERVATION; and
6  ALLOTTEES OF MA-8, also known
   as Moses Allotment 8,
7                                Defendants.

8

9        A bench trial was held in the above-captioned case on March 30–31, 2021, via

10  videoconferencing pursuant to the parties' stipulation and consent to the same.  ECF

11  Nos. 657, 672.  Plaintiffs Paul Grondal and Mill Bay Members Association, Inc.

12  (collectively "Mill Bay") were represented by Sally W. Harmeling and Robert R.

13  Siderius, Jr.  Assistant United States Attorneys Joseph P. Derrig and Jessica A.

14  Pilgrim appeared on behalf of the Federal Defendants.  The Court heard testimony in

15  open court from the following witnesses:  Federal Defendants' expert Bruce C.

16  Jolicoeur; Plaintiffs' expert Ken Barnes; Jeffery Webb; and Douglas Gibbs.  All of

17  the exhibits that were admitted in evidence have been reviewed and considered by

18  the Court.

19        Having heard testimony and fully reviewed all of the materials submitted by

20  the parties and the record in this matter, the Court makes the following Findings of

21  Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

**PREVIOUS RULINGS**

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345.  ECF No. 144 at 24.

On July 9, 2020, the Court granted the Federal Defendants' motion for summary judgment which sought to eject Plaintiffs Paul Grondal and Mill Bay Members Association, Inc., from property known as MA-8, and an award of damages for Plaintiffs' occupation of MA-8.  *See* ECF No. 503; *see also* 25 C.F.R. § 162.023 ("If an individual or entity takes possession of, or uses, Indian land without a lease and a lease is required, the unauthorized use is a trespass.").  The Court expressly found that "Plaintiffs have had no right to occupy any portion of MA-8 after February 2, 2009."  ECF No. 503 at 71; *see also* ECF No. 534 ("The parties agree that the following claims remain in this case:  The United States has successfully established its counterclaim in ejectment and thus an assessment of monetary damages based on Mill Bay's trespass remains.").

All of the findings and conclusions set forth in ECF No. 503 are incorporated by this reference and are the law of this case.

**FINDINGS OF FACT**

This dispute concerns Moses Allotment No. 8 ("MA-8"), which is fractionated allotment land near the banks of Lake Chelan in Washington State, held in trust by the United States Government for individual Indian allottee landowners and the Confederated Tribes of the Colville Reservation (the "Tribes").  Plaintiffs and

Counterclaim Defendants in this case are Paul Grondal and Mill Bay Members Association, Inc. (collectively "Mill Bay") who are non-Indians who purchased, or represent a group of individuals who purchased, camping memberships to use 23.52 acres of MA-8 for recreational purposes. These memberships were represented to be effective through 2034.

Plaintiffs purchased these camping memberships from companies owned or controlled by William Evans Jr. ("Evans"), who was an Indian allottee landowner holding a beneficial ownership interest in MA-8. Evans had leased MA-8 from the other individual Indian allottee landowners who held a beneficial ownership interest in MA-8 in accordance with federal regulations in 1984 (the "Master Lease").

The Master Lease granted use of MA-8 to Evans for a period of twenty-five years, beginning in 1984 and ending on February 2, 2009. The Master Lease had an initial twenty five-year term with an option to renew for another twenty-five years. If renewed, the Master Lease would have extended to 2034. However, the "option to renew the Lease was not effectively exercised by Evans, or later by Wapato, and [ ] the Lease terminated upon the last day of its 25-year term." *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1040 (9th Cir. 2011). Thus, the Master Lease expired on February 2, 2009.

Between 1985 and 1994, Evans, through his company Chief Evans, Inc., sold 150 "Regular" memberships and 23 "Expanded" Mill Bay memberships to Plaintiffs or their predecessors in interest. ECF No. 503 at 8. "Regular" memberships were

represented to be effective through 2034 and were sold for a fee of $5,995. "Expanded" memberships were represented to be effective through 2034 and were sold for a fee of $25,000. Plaintiffs' camping memberships gave them the right to use a RV park on 23.52 acres of MA-8 ("RV park") consistent with the Master Lease. "These camping memberships are contracts between Plaintiffs and Evans/Wapato Heritage." ECF No. 503 at 65.

Evans, through his corporate entity Chief Evans, Inc., threatened to close the RV park in or about 2001. In 2002, Paul Grondal and all similarly situated Mill Bay Resort Members sued Chief Evans, Inc., in Chelan County Superior Court, Cause No. 02-2- 01100-9.

Evans also established Wapato Heritage, LLC ("Wapato Heritage"), a Washington state corporation, in July 2002. As Evans' successor in interest, Wapato Heritage presently possesses a life estate in Evans' MA-8 allotment interest (approximately 23.8 percent) with the remainder reverting to the Tribes. Mr. Jeffery Webb is the manager of Wapato Heritage.

On April 16, 2003, all Mill Bay Resort Members, then existing, formed and incorporated the Mill Bay Members Association, Inc., a Washington state non-profit corporation. The Mill Bay Members Association, Inc., is comprised of 173 members.

In May of 2003, William Evans' Last Will and Testament was drafted with Mr. Webb as the personal representative of the (non-trust) estate of William Evans.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

Mr. Webb previously had been appointed as Evans' limited Guardian in 2001. Evans died in September 2003. A probate proceeding was started for Evans' non-trust assets in Chelan County Superior Court, Cause No. 03-4-00185-8 (Chelan Super. Ct., 2003).

In 2004, Grondal and all similarly situated Mill Bay Resort Members sued Jeffrey Webb in Chelan County Superior Court, Cause No. 04-2-00441-6 (Chelan Super. Ct., 2004). Paul Grondal and Mill Bay settled its lawsuits against Chief Evans, Inc., and Jeffery Webb, and the settlement agreement was entered into the court record of the Evans's state probate proceeding (the "2004 Settlement Agreement"). As part of the 2004 Settlement Agreement, the Mill Bay Members agreed to pay escalating annual rent for their continued use of the RV park through 2034. Ex. 65 at 7. The Bureau of Indian Affairs ("BIA") was not a party to the 2004 Settlement Agreement. Ex. 41.

The rents for both 2004 and 2005 were collected in December 2004. Ex. 45 at 2. Wapato Heritage collected approximately $48,000 (referred to by Plaintiffs as "upfront settlement funds"). *Id.* at 8. Fifty percent of the entire amount of rents collected in December 2004 was remitted to the BIA for distribution to the individual allottee landowners (approximately $23,478.69). *Id.* at 2, 8. Mr. Webb described "[t]his payment over and above what was required under the Master Lease . . . as an incentive [to the individual allottees] to enter into a new master lease allowing for residential development of a portion of the MA-8 land." *Id.* at 3; *see*

1  *also* Ex. 41 at 3 ("The attached check represents 50% of your 2004 & 2005 MA-8

2  R.V. Park Rental Income.  The remaining balance will be mailed upon receipt of

3  your vote per the proposed MA-8 development.").  Some individual allottee

4  landowners demanded and received the remaining fifty percent balance directly from

5  Wapato Heritage.  Ex. 45 at 3.  Accordingly, in 2006, Wapato paid to some

6  individual allottee landowners 7.5 percent of the rent collected from Mill Bay

7  ($1,875) plus an added $3,351.07, reflecting the fifty percent balance of the

8  2004/2005 rents that some individual allottee landowners demanded.  Ex. 45 at 3, 8.

9      On November 30, 2007, the BIA sent a letter to the Tribes and Wapato

10  Heritage stating that, in its opinion, the option to renew the Master Lease had not

11  been effectively exercised.  As of the date of the letter, November 30, 2007, Wapato

12  Heritage still had two months left in which to exercise its option to renew the Master

13  Lease.  It did not do so.

14      In June of 2008, Wapato Heritage filed suit against the United States in

15  *Wapato Heritage, LLC v. United States*, No. 08-cv-177-RHW (E.D. Wash.)

16  (Whaley, J.).  *See Wapato Heritage, LLC v. United States*, No. CV-08-177-RHW,

17  2008 WL 5046447 (E.D. Wash. Nov. 11, 2008) (holding that Evans and Wapato

18  Heritage failed to renew the Master Lease) *aff'd,* 637 F.3d 1033, 1040 (9th Cir.

19  2011).

20      In 2008, the United States notified Mill Bay that the Master Lease was never

21  properly renewed, and the Master Lease would expire on February 2, 2009.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

1    On January 21, 2009, Plaintiffs filed the instant lawsuit against the United

2  States and the individual allottee landowners (collectively the "Federal

3  Defendants"), as well as Wapato Heritage, seeking declaratory and injunctive relief.

4  ECF No. 1.  Plaintiff Paul Grondal took no actions separate and apart from his role

5  as a member of the Mill Bay Members Association, Inc.

6    On March 16, 2009, the BIA notified Wapato Heritage that it was rejecting

7  Wapato Heritage's proffered payments for annual "base rent" and "ground rent"

8  made pursuant to the Master Lease since the lease had expired by its own terms on

9  February 2, 2009.  *See* Ex. 40.

10    From 2009–2020, Mill Bay Members continued to pay rent to Wapato

11  Heritage pursuant to the 2004 Settlement Agreement.  Exhibits 25, 27–30, 45 at 8.

12  Mr. Webb testified that Wapato Heritage received annual rental payments from Mill

13  Bay and cashed the checks received.  *See, e.g.*, Ex. 25 at 2 ("Enclosed is the Mill

14  Bay Members Association's 2010 RV rental park payment in the amount of

15  $30,000.00.  As per previous agreements, please remit this payment to the individual

16  MA-8 allottees/landowners via the [BIA].").  However, according to the testimony

17  of Mr. Webb, Wapato Heritage did not remit these payments to the individual

18  allottee landowners based upon (1) the BIA's previous rejection of payments

19  tendered by Wapato Heritage per the letter received in 2009, Ex. 40; and (2) Wapato

20  Heritage's not having access to the individual allottees' addresses.

21

On April 3, 2009, the United States filed a counterclaim against Mill Bay for ejectment from the RV park and for trespass damages. ECF No. 42. Mill Bay pleaded 19 affirmative defenses, including the following:

> 9. The Federal Defendants' alleged damages and injury were caused by the fault of other defendants in this action.
>
> 12. Federal Defendants carelessly and negligently conducted itself that it contributed directly and proximately to Federal Defendants' own alleged injuries and damages.
>
> 13. As to all causes of action, Plaintiffs allege that Federal Defendants have unreasonably delayed in bringing this action and asserting these rights, or both, to the prejudice of Plaintiffs, and therefore Federal Defendants' Counterclaim, in whole or in part, is barred by the doctrine of laches.
>
> 14. Federal Defendants' recovery in this action is barred in whole or in part by its failure to exercise reasonable diligence to protect its own interests or to mitigate any alleged damages.
>
> 15. Plaintiffs are entitled to offset against any damages awarded to Federal Defendants.

ECF No. 43 at 5–6.

On September 1, 2009, the United States filed a Motion for Summary Judgment on its ejectment counterclaim. ECF No. 70.

On January 12, 2010, the Court denied the United States' Motion for Summary Judgment Re Ejectment as premature. ECF No. 144 at 26-27.

On May 24, 2010, the Court granted the parties' stipulated request to stay the proceedings and stay all discovery to facilitate settlement conversations. ECF No.

197 at 3-4.  The parties conducted two separate mediation sessions attempting to resolve the case.  ECF No. 206.

On April 1, 2011, the Court entered an Order directing the parties to file a Status Report on whether a stay was still warranted.  ECF No. 205 at 1-2.  The parties requested the stay be continued to allow for further mediation and for a determination on whether the Ninth Circuit would hear *Wapato Heritage, LLC v. United States* en banc.  ECF Nos. 206, 207; *see Wapato Heritage v. United States*, 637 F.3d 1033 (9th Cir. 2011); *see also Wapato Heritage v. United States*, 423 Fed. Appx. 709 (9th Cir. 2011).

On March 22, 2012, the United States filed a renewed Motion for Summary Judgment seeking ejectment of Plaintiffs from the RV park ("Motion for Summary Judgment Re Ejectment").  ECF No. 231.

On March 29, 2012, the Court entered an Order lifting the stay and granting an extension on the briefing schedule for the United States' Motion for Summary Judgment Re Ejectment.  ECF No. 242 at 1–2.

On April 17, 2012, the Court entered an Order staying all briefing deadlines on the United States' Motion for Summary Judgment Re Ejectment, pending resolution of a Motion for Continuance filed by the Plaintiffs.  ECF No. 252 at 3.

On May 21, 2012, the Court granted Plaintiffs' Motion to Continue the United States' Motion for Summary Judgment Re Ejectment to allow Plaintiffs to conduct discovery on their estoppel defense/claim.  ECF No. 267.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

On January 10, 2013, after hearing oral argument on the United States' Motion for Summary Judgment Re Ejectment, the Court entered an Order Directing Supplemental Briefing on the issue concerning MA-8's trust status. ECF Nos. 308, 310.

On August 1, 2014, the Court entered a Memorandum and Order Re: Appointment of Counsel, noting that the United States' Motion for Summary Judgment Re Ejectment was still pending, but declining to rule on the motion until supplemental briefing concerning the unrepresented individual allotee landowner Defendants had been submitted by the United States. ECF No. 329.

On September 23, 2014, the Court granted the United States' request for a one-month extension of time to submit the requested briefing. ECF No. 338. The United States timely submitted the requested supplemental briefing. ECF Nos. 339, 340.

On February 23, 2016, an Order was entered Re: Pending Motions and Directing Filing of Reports, in which the Court acknowledged that the United States' Motion for Summary Judgment Re Ejectment was still pending but declining to rule on the motion until the United States submitted further information concerning legal representation of the individual Defendants. ECF No. 345. The parties timely responded to the Court's Order. ECF Nos. 345–349.

On June 27, 2018, an Order was entered directing additional filings. ECF No. 353. The parties timely responded to the Court's Order. ECF Nos. 356–358, 360.

On September 16, 2019, an Order was entered of voluntary Recusal of Judge Quackenbush.  ECF No. 366.

On September 17, 2019, the case was reassigned to Judge Rosanna Malouf Peterson, currently presiding over this matter.  ECF No. 367.

On November 1, 2019, the Court entered an Order Memorializing the Court's Oral Rulings and Setting Briefing Schedule on the issue of whether the United States must provide representation for the individual allottee landowner Defendants, and noted "[a]fter the Court resolves the issue of legal representation of the parties, the Court will set a briefing schedule for the issue of whether the property at issue is trust land."  ECF No. 389 at 3.

On March 26, 2020, the Court entered an Order Regarding Representation of the Allottees finding that the United States need not supply the individual allottee landowner Defendants with representation, and setting a supplemental briefing schedule on the United States' Motion for Summary Judgment Re Ejectment.  ECF No. 411.

On July 9, 2020, the Court entered an Order Granting the United States' Motion for Summary Judgment Re Ejectment finding that MA-8 is trust land, and ordering the ejectment of Mill Bay from the RV Park on MA-8.  ECF No. 503.  The Court held that, "[i]t is undisputed that Plaintiffs are presently in possession of a portion of MA-8" and "[i]t is undisputed that Plaintiffs have no lease or express easement authorizing their use of MA-8."  *Id.* at 65.

On July 28, 2020, the Government requested that Mill Bay remove its personal property and recreational vehicles from MA-8 by September 30, 2020.  On August 31, 2020, Mill Bay requested that it be allowed to formally close the park by September 30, 2020.  The Government and the landowners holding a majority percentage interest in the land agreed.  On September 30, 2020, Mill Bay vacated MA-8.

At trial, the Court heard competing expert testimony on damages, quantified as the reasonable rental value of the 23.52 acres of MA-8 during the period of Mill Bay's occupancy.

The Federal Defendants' expert witness, Bruce C. Jolicoeur, initially concluded that the reasonable rental value of the subject property from February 1, 2009, to October 31, 2020, was $2,549,199.  Ex. 20.  He further concluded that the subject property's highest and best during the period of trespass was residential development, notwithstanding the fact that MA-8 was determined to be trust land and the fact that during the 2008-09 recession "sales activity slowed, and . . . sales of new homes all but stopped." *Id*. at 29.

Mr. Jolicoeur first developed an opinion of the fair market value of the property as of 2020, and then completed a "retrospective analysis" dating back from 2020 to 2009.  *Id*. at 3.  The appraisal was based on the "extraordinary assumption that characteristics of the land have not changed between February 2009 and the current date." *Id*.

Mr. Jolicoeur also appraised the property under the following hypothetical conditions: (1) the property could be sold openly under conditions similar to typical sales of property in private ownership; (2) the property rights transferred in a hypothetical sale of the subject property are similar to the fee simple interests typical in sales of privately owned land; and (3) the property is unimproved/vacant, "even though it is currently improved with an operating RV park." *Id*. at 3–4. He then opined a yield rate of 7 percent and applied this rate to the market value of the property to develop the total amount of rent due as compensation for trespass. *Id*. at 51.

With respect to residential development, Mr. Jolicoeur opined that if the land was held in private ownership, the likely zoning of the property was UR1. *Id.* at 25–26. Mr. Jolicoeur concluded that at four lots per acre, as allowed in the UR1 zone, the property could accommodate 94 lots. *Id*.

Mr. Jolicoeur's supplemental report, dated February 12, 2021, and produced after Plaintiffs' expert's report was disclosed, recalculated the rental value to be $1,674,600 for the period of trespass from February 2, 2009, to September 30, 2020. Ex. 268. The supplement was subject to the additional extraordinary assumption that wetlands exist on the subject property. *Id*. at 2.

Mr. Jolicoeur estimated that the trespassed portion of MA-8 included 10.124 acres of wetlands. *Id*. at 6. In addition to the wetlands, a buffer of 50' to 200' is required depending on the category of the wetlands. *Id*. Mr. Jolicoeur revised his

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14

opinion that the property could accommodate 94 lots to 58 lots, contending that some lots could incorporate a portion of the wetlands and set back area for recreational purposes. *Id*. at 10. Mr. Jolicoeur concluded that the market value of each lot was $43,000, and the fair market value of the property was $2,490,000. *Id*. at 19. He then completed a "retrospective analysis" for market value dating back from 2020 to 2009. *Id*. at 23. He once again applied a yield rate of 7 percent to develop the rent due for trespass. *Id*. Mr. Jolicoeur concluded that $1,674,600 is the total amount of rent due as compensation for trespass. *Id*. at 2.

Plaintiffs' expert, Ken Barnes, testified that the reasonable amount of rental value for the duration of trespass is $1,411,702. Exhibits 1 at 10, 67 at 8. Mr. Barnes disagreed that the single highest and best use for the entire duration of trespass would be residential development, because such development is "speculative." Ex. 67 at 3. Mr. Barnes testified that the subject property's highest and best use is its current use as a RV park. *Id.* at 4, 8. However, if developed as residential property after the market had recovered from the recession, Mr. Barnes opined that the property could accommodate only 53 lots given the presence of 10.124 acres of wetlands. *Id.* at 3.

For comparative purposes, Mr. Barnes estimated market rent for a 53-lot development starting in year 5 (2013), after the recession and the market's recovery, using the same methodology as the Appraisal completed by Mr. Jolicoeur: market value times a rate of return. *Id.* at 4, 7–8. However, Mr. Barnes opined and applied

a rate of return of 6 percent rather than the 7 percent yield rate used by Mr.

Jolicoeur.  Ex. 67 at 6–7.  Using the same market value of $43,000 per lot that Mr.

Jolicoeur had used, Mr. Barnes concluded that the fair market value of the property

was $2,279,000.  *Id*. at 8.  Using the 6 percent rate of return, Mr. Barnes concluded

that if the property was developed into a 53-lot development in 2013, the total

amount of rent due as compensation for trespass would be $1,287,578.  *Id.* at 7–8

("Note that the Annual Rent for the 53-lot development never exceeds the Market

Rent for an RV park.").

To estimate the market rent as a RV park from 2009 through 2012, Mr. Barns

analyzed leases of RV parks around Central Washington, including comparisons in

Crescent Bar.  *Id*. at 6.  Based on these comparisons, Mr. Barnes concluded that the

market rent for the subject 65 RV pads would be $1,700 per pad, or $110,500 per

year, escalated by 4 percent beginning in 2013.  *Id.*  Based on the determination that

the property's highest and best use is as a RV park, Mr. Barnes concluded that the

total amount of rent due as compensation for trespass is $1,411,702.  Ex. 67 at 8.

At the conclusion of the Defendants' case in chief, Plaintiffs moved for a

directed verdict on the Federal Defendants' claim for trespass damages with respect

to (1) the Mill Bay Members Association, Inc., and (2) Plaintiff Paul Grondal

individually.  Plaintiffs argued that the Federal Defendants had failed to present

evidence as to the duration and location of the trespass.  Plaintiffs renewed its

motion for a directed verdict at the close of all the evidence, and the Court reserved ruling on the motion.

## CONCLUSIONS OF LAW

### Duration of Trespass

Federal law controls actions for trespass on Indian land. *See Oneida County v. Oneida Indian Nation of New York State*, 470 U.S. 226, 235–36 (1985). Federal common law allows the Government to bring a trespass claim, acting in its sovereign capacity as trustee, to remove trespassers from Indian land. ECF No. 503 at 61 (citing *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994)); *see also* 25 C.F.R. § 162.023 ("What if an individual or entity takes possession of or uses Indian land without an approved lease or other proper authorization?").

If an individual or entity takes possession of, or uses, Indian land without a lease and a lease is required, the unauthorized possession or use is a trespass. 25 C.F.R. § 162.023. Trespass means any unauthorized occupancy, use of, or action on any Indian land or Government land. 25 C.F.R. § 162.003.

Mill Bay's right to use MA-8 flowed from the Master Lease, which expired by its own terms on February 2, 2009. Thus, Mill Bay's right to use any portion of MA-8 expired on February 2, 2009. *See* Ex. 200 (outlining RV park's location on MA-8).

/ /

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 17

1    Aside from the Mill Bay members' physical use of the property, Mill Bay

2  continuously occupied MA-8 by virtue of its personal property which included

3  approximately 90 RVs, docks, a tractor, multiple sheds, numerous mowers,

4  miscellaneous tools, a pump, network equipment, picnic tables, decks, gazebos,

5  buoys, pool table, ping pong table, miracle rake, pole saw sheds, kayaks, and file

6  cabinets.  ECF No. 563.  Many Mill Bay members left their RVs on MA-8 and

7  further had "no ability to move their RVs" because some RVs were "located behind

8  heavy concrete blocks walls that [would] require either an excavator or a team of

9  people to dig out."  Exhibits 255, 258 at 2–3; *see also see also* Exhibits 259–267

10  (aerial view of RV-park captured in 2009, 2011, 2013–2015, and 2017).

11    Accordingly, the Court finds that Mill Bay used and occupied the subject

12  portion of MA-8 from February 2, 2009, to September 30, 2020, which constitutes

13  the period of trespass.

14  **Trespass Damages**

15    Remedies for trespass on Indian land under federal common law include

16  ejectment and damages.  *United States v. Torlaw Realty, Inc*., 483 F. Supp. 2d 967,

17  973 (C.D. Cal. 2007), *aff'd*, 348 F. App'x 213 (9th Cir. 2009).

18    The proper measure of damages for trespass is the fair rental value of the

19  property, assuming that the property is being put to its highest and best use.  *United*

20  *States v. Imperial Irr. Dist*., 799 F. Supp. 1052, 1066 (S.D. Cal. 1992).  The highest

21  and best use of a property is the use that is legally permissible, physically possible,

1    and financially feasible which results in the highest value.  Ex. 268 at 14.

2    Based on a careful review of the expert witnesses' testimony, the Court

3    concludes that the highest and best use of the property is its present use as a RV

4    park.  The Court finds that the property was unlikely to be used as a residential

5    subdivision during the time period in question given the recession occurring

6    concurrently, the land's cultural significance, and the nature of any subsequent

7    residential ownership being encumbered by the land's trust status rather than being

8    held in fee simple.

9    The Court concludes that the reasonable rental value of the portion of MA-8 if

10   used as its highest and best use as a RV Park for the time period of February 2, 2009,

11   through September 30, 2020, is **$1,411,702.00**.

12   **Prejudgment Interest**

13   An award of prejudgment interest under federal law is left to the discretion of

14   the court.  *Home Sav. Bank by Resolution Tr. Corp. v. Gillam*, 952 F.2d 1152, 1161

15   (9th Cir. 1991).  Prejudgment interest has become a familiar remedy widely

16   recognized by federal courts as a means to make a plaintiff whole against a dilatory

17   defendant.  *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 922 (9th Cir. 1995).  "The

18   cases teach that interest is not recovered according to a rigid theory of compensation

19   for money withheld but is given in response to considerations of fairness.  It is

20   denied when its exaction would be inequitable."  *Board of County Commissioners v.*

21   *United States*, 308 U.S. 343, 352 (1939).

The Court concludes that an award of prejudgment interest in this case would be inappropriate and inequitable and therefore exercises its discretion to deny prejudgment interest on that basis. The Court recognizes that there have been several significant delays involved in this case. However, the Court does not attribute these delays to either party. For example, the Court's previous Orders delayed resolution on liability in order to first determine whether MA-8 remained held in trust by the United States, ECF No. 308, as well as address concerns related to representation for the individual allottees, ECF Nos. 329, 411. Other delays were a product of the parties' joint requests or in response to the pendency of an appeal before the Ninth Circuit in related matters. *See, e.g.*, ECF No. 150, 206.

Moreover, the circumstances giving rise to the occupancy constituting trespass do not support an award of prejudgment interest against Mill Bay, a non-profit corporation. As member Mr. Douglas Gibbs testified, memberships entitling members to use the RV park were represented to be effective through 2034. Although these representations proved to be false, Mill Bay's trespass was a direct result of the misrepresentations and flowed from the failure to renew the Master Lease by Evans and later by Wapato Heritage.

Therefore, in response to considerations of fairness, the Court declines to award prejudgment interest.

/ /

/ /

**Post-judgment Interest**

Under 28 U.S.C. § 1961, post-judgment interest on any money judgment is mandatory. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). The purpose of awarding post-judgment interest is to compensate the wronged party for the deprivation of the monetary value of its loss until the payment of the judgment by the defendant. *United States v. Bell*, 602 F.3d 1074, 1083 (9th Cir. 2010).

Thus, post-judgment shall be awarded on the amount of trespass damages totaling **$1,411,702.00**, running from the date of the entry of judgment until paid. Post-judgment interest shall be calculated at the statutory rate: a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961(a).

**Joint and Several Liability**

The Federal Defendants seek to hold Paul Grondal and Mill Bay jointly and severally liable for trespass damages. ECF No. 676 at 3 (citing *Lovejoy v. Murray*, 70 U.S. 1, 10–11 (1865)) ("[P]ersons engaged in committing the same trespass are joint and several trespassers."). The rationale for joint and several liability is that "concerted wrongdoers are considered 'joint tort-feasors' and in legal contemplation, there is a joint enterprise and a mutual agency, such that the act of one is the act of all and liability for all that is done is visited upon each[.]" *Cayuga*

*Indian Nation of New York v. Pataki*, 79 F. Supp. 2d 66, 73 (N.D.N.Y. 1999) (citations omitted)).

The Court finds that it would be inequitable to hold Mr. Grondal jointly and severally liable for the amount of trespass damages as he is one of many individuals who used MA-8 during the period of trespass. *See id.* at 72 (declining to find approximately 7,000 individual landowners jointly and severally liable "given the relative equities and because it would be fundamentally unfair.").

The act of Mill Bay occupying MA-8 after the Master Lease expired was the act of the Association comprised of 173 members, including Mr. Grondal. *See id.* at 73 ("[T]he act of one is the act of all and liability for all that is done is visited upon each"). However, there is no evidence that Mr. Grondal's individual actions undertaken in relation to his membership to use MA-8 were different from the actions of the Association and its other 172 members or that he alone exacerbated the damages caused by Mill Bay's trespass so as to justify holding Mr. Grondal jointly and severally liable. The Court concludes that Mr. Grondal was a named member, but that he did not act differently from any other member of Mill Bay with respect to the act of trespassing on MA-8.

Accordingly, the Court declines to hold Plaintiff Paul Grondal jointly and severally liable for trespass damages. As one of 173 members, the Court will only hold Mr. Grondal severally liable for 1/173 of the trespass damages awarded to the Federal Defendants.

## Mill Bay's Affirmative Defenses

**Fault of a Non-Party**

Mill Bay asserted the following defense to the Federal Defendants' counterclaim for trespass: "The Federal Defendants' alleged damages and injury were caused by the fault of other defendants in this action." ECF No. 43 at 5; *see also* ECF No. 668 at 7 (Mill Bay's stating exhibit at issue was relevant to "fault of a non-party" defense).

Although the camping memberships purchased by Mill Bay members or their predecessors in interest were represented to be effective through 2034, knowledge of one's status as a trespasser is not necessary to be in trespass. *Commil USA, LLC v. Cisco Systems, Inc.,* 575 U.S. 632, 646 (2015) ("Trespass can be committed despite the actor's mistaken belief that she has a legal right to enter the property.") (citations omitted). Furthermore, "comparative fault is inapplicable in the context of an intentional tort." *Est. of Moreno by & through Moreno v. Corr. Healthcare Companies, Inc*., No. 4:18-CV-5171-RMP, 2019 WL 10733237, at *3 (E.D. Wash. Aug. 5, 2019) (citing *Morgan v. Johnson*, 137 Wn.2d 887, 896, 976 P.2d 619, 623 (1999)).

Therefore, the Court finds that Mill Bay's fault of non-party defense is not applicable here.

/ /

/ /

**Laches**

Mill Bay seeks to limit the amount of damages based on the affirmative defense of laches.  ECF No. 43 at 5–6.

To establish laches, a party must establish (1) lack of diligence by the opposing party, and (2) prejudice to the party asserting the equitable defense. *Costello v. United States*, 365 U.S. 265, 282 (1961).  "Laches is an equitable time limitation on a party's right to bring suit."  *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979).  "It protects against difficulties caused by the unreasonable delay in bringing an action, not against problems created by the pendency of a lawsuit after it is filed."  *Id.* (citations omitted).

The Supreme Court has "never applied laches to bar in their entirety claims for discrete wrongs occurring within a federally prescribed limitations period." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 680 (2014); *see* 28 U.S. C. § 2415(b); "[S]tate-law defenses to possessory claims, such as estoppel and laches, are [ ] preempted."  *See* Felix S. Cohen, *Cohen's Handbook of Federal Indian Law*, § 15.08[4] (citing *County of Oneida*, 470 U.S. at 241); *see also United States v. Ahtanum Irr. Dist.*, 236 F.2d 321, 334 (9th Cir. 1956) ("No defense of laches or estoppel is available to the defendants here for the Government as trustee for the Indian Tribe is not subject to those defenses.").

Although laches cannot bar the government's claim for damages, a "lack of diligence by the government in exercising its role as trustee may be weighed by the

district court in calculating damages." *Brooks v. Nez Perce County*, 670 F.2d 835, 837 (9th Cir. 1982) (fifty-four-year delay between government joining the action as party-plaintiff and wrongful taxation of Indian land by county); *Jones v. United States*, 9 Cl. Ct. 292, 294 (1985), *aff'd*, 801 F.2d 1334 (Fed. Cir. 1986) (affirming district court's award of damages which was reduced by fifty percent due to government's fifty-four-year delay in the exercising of its role as trustee).

The Court finds that the circumstances of the case do not warrant application of the equitable remedy of laches to reduce the award of damages here. Mill Bay instituted the instant case on January 21, 2009, prior to the trespass. ECF No. 1. The Federal Defendants asserted the counterclaim of trespass on April 3, 2009, within two months of the start of the trespass. ECF No. 42. On September 9, 2009, the Federal Defendants moved for summary judgment on their counterclaim for trespass seeking ejectment of Mill Bay. ECF No. 70. After the motion for summary judgment was denied with leave to renew, ECF No. 144, the Federal Defendants renewed their motion for summary judgment seeking an order ejecting Plaintiffs from MA-8 on March 22, 2021. ECF No. 231. Thus, there was no unreasonable delay in bringing the counterclaim, let alone any delay analogous to the half century delay in *Brooks*, so as to justify a reduction to the award of damages.

Plaintiffs argue that the Federal Defendants' non-attempt to reobtain possession during the pendency of this lawsuit via a temporary restraining order,

preliminary injunction, or other provisional relief prejudiced Mill Bay due to the accrual of damages. However, Plaintiffs also specifically sought an order at the outset of litigation enjoining the Federal Defendants from closing or ejecting Mill Bay from the RV park pending a hearing and determination of Plaintiffs' request for injunctive relief. ECF Nos. 1 at 44, 8. Plaintiffs' request was denied with leave to renew. However, if Plaintiffs' motion had been granted, the result would have been a stay of the status quo.

Mill Bay now claims that the Federal Defendants' inaction[s] and the continuation of the status quo have prejudiced Mill Bay, but the fact that Mill Bay initially sought to ensure the Federal Defendants' inaction at the outset of this litigation cuts against the prejudice, if any, suffered by Mill Bay. *See also Weyerhaeuser Co. v. Brantley,* 510 F.3d 1256, 1268 (10th Cir. 2007) (rejecting defendant's argument that plaintiff "should have mitigated damages by removing him from the land sooner" which the Court found "was an odd position given that [defendant] also claim[ed] a possessory right to the land and that he had no obligation to leave."); *see also* Ex. 243 (Mill Bay member Frank Smith providing a "Legal Report" at a Mill Bay Board Meeting on May 27, 2017, and stating that "[w]e are at a standstill—which is good for us.").

Accordingly, the Court does not find that the doctrine of laches is applicable to reduce the award of damages here.

/ /

**Failure to Mitigate Damages**

Mill Bay argues that the Federal Defendants' recovery in this action is barred in whole or in part by its alleged failure to mitigate damages. Mill Bay contends that the Federal Defendants failed to mitigate damages by (1) failing to diligently prosecute their ejectment counterclaim; and by (2) rejecting payments from Wapato Heritage.

"The doctrine of mitigation of damages prevents an injured party from recovering damages that she could have avoided if she took reasonable efforts after the wrong was committed." *Thompson v. United States Bakery, Inc.*, No. 2:20-CV-00102-SAB, 2020 WL 7038591, at *3 (E.D. Wash. Nov. 30, 2020) (citation omitted); *see Oneida Indian Nation of New York v. New York,* 194 F. Supp. 2d 104, 122 (N.D.N.Y. 2002) (finding that "Defendant cannot rely on Plaintiffs' delay in bringing suit to escape liability" but that "the defense of mitigation is relevant to [the] issue of damages").

For the same reasons that the Court rejected Plaintiffs' laches defense, discussed *supra,* the Court does not find that the Federal Defendants failed to mitigate their damages by failing to diligently prosecute their ejectment counterclaim. The facts show that there was no unjust delay by the Federal Defendants in filing the counterclaim for trespass. The Court does not assign more or less fault to one party over the other as to the length of this litigation.

/ /

With respect to the proffered payments by Wapato Heritage, the Court also does not find that the Federal Defendants failed to mitigate damages for Mill Bay's trespass by declining to accept payments from Wapato Heritage as there was no longer a valid lease or any other agreement with Mill Bay to which the Federal Defendants were a party.

Mill Bay's obligation to pay rent was owed to Wapato Heritage, which owed separate duties as Lessee under the Master Lease. Under the Master Lease, Wapato Heritage was obligated to pay to the individual allottee landowners 7.5 percent of rents collected from Mill Bay. *See* Ex. 45 at 3, 8 (Column C). Once the Master Lease expired in 2009, Wapato Heritage was no longer obligated to pay base or annual ground rent to the BIA since Wapato Heritage no longer leased MA-8. Before and after the Master Lease's expiration, there were no mutual obligations between the Federal Defendants and Mill Bay; any obligations flowed through Wapato Heritage.

Furthermore, to the extent Plaintiffs rely on Landlord/Tenant principles to support their position that the BIA should have accepted payments toward holdover rent, ECF No. 674 at 27 (citing *In re Collins*, 199 B.R. 561, 565 (Bankr. W.D. Pa. 1996)), this Court previously held that "Plaintiffs were mere licensees, not tenants, as their right was to use the premises . . . Neither the Expanded Membership Agreements nor the 2004 Settlement Agreement have specific indicia of leases." ECF No. 144 at 29.

1    Therefore, the Court does not find that the Federal Defendants failed to

2    mitigate their damages.

3    **Offset/Recoupment**

4    Mill Bay argues that any award of damages for trespass must be reduced by

5    offset (also called setoff) or recoupment to account for Mill Bay's "prepaid rents"

6    which include the "Expanded" camping memberships ($25,000 per membership),

7    "Regular" camping memberships ($5,995 per membership), and additional monies

8    tendered under the 2004 Settlement Agreement ($48,000).  ECF No. 674 at 28.

9    *Offset*

10   "Setoff allows adjustments of mutual debts arising out of separate

11   transactions between the parties." *In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th

12   Cir. 1995).  "The right of setoff (also called 'offset') allows entities that owe each

13   other money to apply their mutual debts against each other, thereby avoiding 'the

14   absurdity of making A pay B when B owes A.'" *Newbery Corp. v. Fireman's*

15   *Fund Ins. Co*., 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting *Citizens Bank of*

16   *Maryland v. Strumpf*, 516 U.S. 16, 18 (1995)).  "Off-sets, which are often applied

17   in the bankruptcy context, require mutuality: debts in the same right and between

18   the same parties, standing in the same capacity." *Crowley Marine Servs., Inc. v.*

19   *Vigor Marine LLC*, 17 F. Supp. 3d 1091, 1098 (W.D. Wash. 2014) (citing *Newbery*

20   *Corp*., 95 F.3d at 1398).  "The right of off-set is permissive and rests in the

21

discretion of the court, applying general principles of equity." *Crowley Marine Servs., Inc.*, 17 F. Supp. 3d at 1098.

The Court finds that offset is not applicable here where there are no mutual debts between the Federal Defendants and Mill Bay, the only remaining parties in the action before the Court. Whereas Mill Bay is liable to the Federal Defendants for trespass damages, there has been no showing that the Federal Defendants owe Mill Bay any monetary damages. Furthermore, the Court finds that application of an equitable doctrine, such as offset, is not appropriate here where recovery, if any, of Mill Bay's "prepaid rents" sound in contract, arising under agreement[s] between Mill Bay and Wapato Heritage, separate from the action of ejectment and trespass currently before this Court.

***Recoupment***

The parties disagree as to whether Mill Bay timely asserted recoupment as an affirmative defense. *See also* ECF No. 676 at 14; ECF No. 674 at 29 n. 3 (Plaintiffs stating that "[r]ecoupment has been treated as a subset of offset.").

"When the United States files suit, consent to counterclaims seeking offset or recoupment will be inferred." *United States v. Agnew*, 423 F.2d 513, 514 (9th Cir. 1970). Notwithstanding the United States' inferred consent to competing claims, an affirmative defense such as offset or recoupment must be pled. *See In re Tews*, 502 B.R. 566, 569, 570 n 5 (2013) (citing Fed. R. Civ. P. 8(c)); *see also Newberry Corp.*, 95 F.3d at 1399 (stating "recoupment has been analogized to both

compulsory counterclaims and affirmative defenses."). Plaintiffs' Answer to the Federal Defendants' counterclaim is silent with respect to recoupment. ECF No. 43 at 6 ("Plaintiffs are entitled to offset against any damages awarded to Federal Defendants."). In the bankruptcy context, for example, whereas "[r]ecoupment and setoff have much in common, [ ] they have differences with important consequences." *In re TLC Hosps., Inc. v. United States Dep't of Health and Human Servs.*, 224 F.3d 1008, 1011 (9th Cir. 2000). Nonetheless, the Court exercises its discretion to consider recoupment in resolving the issue of trespass damages.

The doctrine of recoupment is equitable in nature and "involves a netting out of debt arising from a single transaction." *In re Harmon*, 188 B.R. at 425. "A claim for recoupment, if successful, can reduce or eliminate the amount of money that would otherwise be awarded to the plaintiff." *United States v. Washington*, 853 F.3d 946, 968 (9th Cir. 2017).

To constitute a claim in recoupment, a defendant's claim must (1) arise from the same transaction or occurrence as the plaintiff's suit; (2) seek relief of the same kind or nature as the plaintiff's suit; and (3) seek an amount not in excess of the plaintiff's claim. *Id.* (citing *Berrey v. Asarco Inc.*, 439 F.3d 636, 645 (10th Cir. 2006)). To determine whether a recoupment claim arises out of the same transaction or occurrence, courts in the Ninth Circuit apply the "logical relationship test." *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d 926, 934

(9th Cir. 2020). "[T]he 'logical relationship' concept is not to be applied so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction." *In re TLC Hosps., Inc.*, 224 F.3d at 1012.

With respect to the "Expanded" and "Regular" camping memberships purchased by Mill Bay, and other monies paid pursuant to the 2004 Settlement Agreement, the Court finds that these payments are not part of the same transaction or occurrence as the Federal Defendants' counterclaim for trespass, but rather, are more appropriately characterized as "multiple occurrences in [a] continuous commercial [contractual] relationship" between Mill Bay and Wapato Heritage. *See* ECF No. 503 at 65 ("These camping memberships are contracts between Plaintiffs and Evans/Wapato Heritage."); *see also* Ex. 41 ("The [BIA] was not a party to the Agreement with the RV members"). Although Mill Bay may be able to recover a portion of these payments from Wapato Heritage to the extent they did not receive the full benefit of the bargain, that bargain was between Mill Bay and Wapato Heritage and predated the period of trespass.

Accordingly, the Court does not find that the award of trespass damages should be reduced under the doctrines of offset or recoupment based on payments made to Wapato Heritage.

**Wapato Heritage's 23.8% Interest**

Mill Bay contends that the Court should reduce damages by the amount paid by Mill Bay to Wapato Heritage in annual rents, or reduce the total award by 23.8

percent, representing Wapato Heritage's 23.8 percent life estate interest in the trespassed property, in recognition of Mill Bay's offset/recoupment defense.  ECF No. 675 at 33.

Mill Bay's argument is premised on two underlying contentions: (1) Any trespass damages awarded will "ostensibly be remitted to the landowners, pro-rata, based on their respective beneficial ownership percentages of MA-8 . . . [t]his distribution includes to Wapato Heritage," and (2) "Wapato Heritage should not be permitted to recover trespass damages despite acquiescing and profiting from Mill Bay's occupancy."  ECF No. 674 at 32–34.

 "A non-Indian devisee . . . may retain a life estate in the interest involved, including a life estate to the revenue produced from the interest."  25 U.S.C. § 2205(c)(2)(B).  "Where the vested holders of remainder interests and the life tenant have not entered into a written agreement approved by the Secretary providing for the distribution of proceeds . . . the Secretary must distribute all rents and profits, as income, to the life tenant."  25 C.F.R. § 179.101(a)(2), (b)(1).  "Rent and profits means the income or profit arising from the ownership or possession of the property."  25 C.F.R. § 179.2.

To the extent Mill Bay seeks to reduce the amount of damages by the amount of annual rental payments made to Mill Bay from 2009–2020, totaling approximately $402,500, it is undisputed that these funds were not remitted to the BIA for distribution to the individual allottee landowners, but appear to have been

retained by Wapato Heritage.  Exhibits 25, 27–30, 45 at 8.  The Court finds, as noted *supra*, that the 2004 Settlement Agreement and the transactions between Mill Bay and Wapato Heritage occurring thereunder are "multiple occurrences in [a] continuous commercial [contractual] relationship."  *In re TLC Hosps., Inc.*, 224 F.3d at 1012.  The Court finds it inappropriate to apply an equitable doctrine, such as offset or recoupment, to reduce trespass damages where the monies at issue were tendered under a separate contractual relationship and the payments or a percentage portion of those payments were not paid to the individual allottee landowners.  However, nothing in this Order shall prohibit Mill Bay from seeking recourse from Wapato Heritage in a separate action.

The Court also concludes that the damages awarded to the Federal Defendants should not be offset by 23.8 percent representing Wapato Heritage's life estate interest.  "Setoff allows adjustments of mutual debts arising out of separate transactions between the parties."  *In re Harmon*, 188 B.R. at 425.

In asserting its claims and defending against the Federal Defendants' counterclaim for trespass, Mill Bay did not assert any claim[s] against Wapato Heritage individually.  Upon dismissal of Wapato Heritage's remaining crossclaims, ECF No. 644, and the Federal Defendants' voluntary dismissal of their sole crossclaim against Wapato Heritage, ECF No. 652, the Court dismissed Wapato Heritage from this action absent a showing that it had suffered an injury-in-fact by Mill Bay's trespass.  Thus, Wapato Heritage is a non-party at this

juncture, and the Court finds no cognizable basis to reduce the award of damages by 23.8 percent.

## CONCLUSIONS

1.     The reasonable rental value of the portion of MA-8 for the period of trespass is **$1,411,702.00.**

2.     Mill Bay occupied the RV park on MA-8 since February 2, 2009, until it vacated MA-8 on September 30, 2020.  Thus, Mill Bay trespassed on MA-8 for 11 years, 7 months, and 29 days (or 4,259 days in total).

3.     The Federal Defendants did not fail to diligently prosecute its ejectment/trespass damages claim.

4.     Having found that the Federal Defendants did not fail to diligently prosecute its ejectment/trespass damages claim, the Federal Defendants' actions or inactions did not prejudice Mill Bay.

5.     Mill Bay's membership fees, settlement payments, and annual payments by Mill Bay to Wapato Heritage, which were never remitted to the individual allottee landowners, shall not be treated as "prepaid rents" for the right to use and occupy MA-8 through 2034.

6.     Trespass damages that accrued during this litigation shall not be reduced based on laches.

7.     Trespass damages that accrued during this litigation shall not be reduced based on failure to mitigate damages by the Federal Defendants.

8.      Even if Mill Bay had pleaded recoupment as an affirmative defense, trespass damages that accrued during this litigation shall not be reduced based on recoupment.

9.      Trespass damages that accrued during this litigation shall not be reduced by Wapato Heritage's 23.8 percent beneficial interest in recognition of Mill Bay's offset defense.

10.     Prejudgment interest shall not be awarded.

11.     Post-judgment interest shall be calculated at the statutory rate.  28 U.S.C. § 1961(a).

12.     Joint and several liability against Plaintiffs Paul Grondal and Mill Bay Members Association, Inc., shall not be entered.  The Court will only hold Mr. Grondal severally liable for 1/173 of the trespass damages awarded to the Federal Defendants.

13.     Plaintiffs' Motion for Directed Verdict with respect to the Federal Defendants' claim for trespass damages against (1) the Mill Bay Members Association, Inc., and (2) Paul Grondal is **DENIED**.

Accordingly, **IT IS HEREBY ORDERED**:  Judgment shall be entered in favor of the United States and against Plaintiffs Paul Grondal and Mill Bay Members Association, Inc., severally liable, in the amount of **$1,411,702.00** with post-judgment interest running from the date of the entry of judgment until paid, and set at a rate equal to the weekly average 1-year constant maturity Treasury

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment pursuant to 28 U.S.C. § 1961(a).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, prepare Judgment in accordance with this Order, and **close this case**.

**DATED** May 17, 2021.


_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge